# EXHIBIT 1



THE STATE EDUCATION DEPARTMENT / THE UNIVERSITY OF THE STATE OF NEW YORK

OFFICE OF STATE REVIEW, 80 Wolf Road, Suite 203, Albany, New York 12205-2643
Tel. 518-485-9373
Fax 518-485-9377

October 29, 2021

John Henry Olthoff, Esq.
Brain Injury Rights Group, Ltd.
300 East 95th Street, Suite 130
New York, NY 10128

Cynthia Sheps, Esq.
New York City Department of Education
Special Education Appeals Unit
333 Seventh Avenue, 12th Floor
New York, NY  10001



Re: Application of a STUDENT WITH A DISABILITY, by her parent, for review of a determination of a hearing officer relating to the provision of educational services by the New York City Department of Education

Dear Counselors:

Please be advised that during our post-decision review process, a typographical error was found on page 13 of Decision No. 21-189 of the State Review Officer. This typographical error has been corrected as follows:

Page 13: The incorrect date of the decision "October 28, 2020" has been changed to reflect the correct date of issuance of "October 29, **2021**."

The original corrected decision has been sent today directly to the New York City Department of Education to the attention of Liz Vladeck, General Counsel.

Enclosed is a copy of the corrected Decision No. 21-189 of the State Review Officer (IHO Case No. 175153) in the above-entitled matter.

October 29, 2021
Page 2

    Please note that this correction does not affect the outcome of Decision No. 21-189. A copy of this letter will be added to the appeal case file as part of the record in this matter.

Sincerely,

/s/ Cynthia DiVirgilio

Cynthia DiVirgilio
Legal Assistant 2

Enclosure

cc:    Liz Vladeck, Esq. (with enclosure)
       Cheryl N. Williams, Esq. (with enclosure)



# The University of the State of New York
## The State Education Department
### State Review Officer
www.sro.nysed.gov

No. 21-189

Application of a STUDENT WITH A DISABILITY, by her parent, for review of a determination of a hearing officer relating to the provision of educational services by the New York City Department of Education

**Appearances:**
Brain Injury Rights Group, Ltd., attorneys for petitioner, by John Henry Olthoff, Esq.

Liz Vladeck, General Counsel, attorneys for respondent, by Cynthia Sheps, Esq

## DECISION

### I. Introduction

This proceeding arises under the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) and Article 89 of the New York State Education Law. Petitioner (the parent) appeals from the decision of an impartial hearing officer (IHO) which partially denied her request for payment of her daughter's tuition costs at the International Institute for the Brain (iBrain) for the 2018-19 school year due to the lack of vision education services for part of the school year. Respondent (the district) cross-appeals from the IHO's determinations that iBrain was an appropriate unilateral placement for the student during the 2018-19 school year and that equitable considerations did not fully bar an award of the cost of tuition at iBrain for the 2018-19 school year. The appeal must be sustained in part. The cross-appeal must be sustained in part.

### II. Overview—Administrative Procedures

When a student in New York is eligible for special education services, the IDEA calls for the creation of an individualized education program (IEP), which is delegated to a local Committee on Special Education (CSE) that includes, but is not limited to, parents, teachers, a school

psychologist, and a district representative (Educ. Law § 4402; see 20 U.S.C. § 1414[d][1][A]-[B]; 34 CFR 300.320, 300.321; 8 NYCRR 200.3, 200.4[d][2]). If disputes occur between parents and school districts, incorporated among the procedural protections is the opportunity to engage in mediation, present State complaints, and initiate an impartial due process hearing (20 U.S.C. §§ 1221e-3, 1415[e]-[f]; Educ. Law § 4404[1]; 34 CFR 300.151-300.152, 300.506, 300.511; 8 NYCRR 200.5[h]-[*l*]).

New York State has implemented a two-tiered system of administrative review to address disputed matters between parents and school districts regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability, or a student suspected of having a disability, or the provision of a free appropriate public education to such student" (8 NYCRR 200.5[i][1]; see 20 U.S.C. § 1415[b][6]-[7]; 34 CFR 300.503[a][1]-[2], 300.507[a][1]). First, after an opportunity to engage in a resolution process, the parties appear at an impartial hearing conducted at the local level before an IHO (Educ. Law § 4404[1][a]; 8 NYCRR 200.5[j]). An IHO typically conducts a trial-type hearing regarding the matters in dispute in which the parties have the right to be accompanied and advised by counsel and certain other individuals with special knowledge or training; present evidence and confront, cross-examine, and compel the attendance of witnesses; prohibit the introduction of any evidence at the hearing that has not been disclosed five business days before the hearing; and obtain a verbatim record of the proceeding (20 U.S.C. § 1415[f][2][A], [h][1]-[3]; 34 CFR 300.512[a][1]-[4]; 8 NYCRR 200.5[j][3][v], [vii], [xii]). The IHO must render and transmit a final written decision in the matter to the parties not later than 45 days after the expiration period or adjusted period for the resolution process (34 CFR 300.510[b][2], [c], 300.515[a]; 8 NYCRR 200.5[j][5]). A party may seek a specific extension of time of the 45-day timeline, which the IHO may grant in accordance with State and federal regulations (34 CFR 300.515[c]; 8 NYCRR 200.5[j][5]). The decision of the IHO is binding upon both parties unless appealed (Educ. Law § 4404[1]).

A party aggrieved by the decision of an IHO may subsequently appeal to a State Review Officer (SRO) (Educ. Law § 4404[2]; see 20 U.S.C. § 1415[g][1]; 34 CFR 300.514[b][1]; 8 NYCRR 200.5[k]). The appealing party or parties must identify the findings, conclusions, and orders of the IHO with which they disagree and indicate the relief that they would like the SRO to grant (8 NYCRR 279.4). The opposing party is entitled to respond to an appeal or cross-appeal in an answer (8 NYCRR 279.5). The SRO conducts an impartial review of the IHO's findings, conclusions, and decision and is required to examine the entire hearing record; ensure that the procedures at the hearing were consistent with the requirements of due process; seek additional evidence if necessary; and render an independent decision based upon the hearing record (34 CFR 300.514[b][2]; 8 NYCRR 279.12[a]). The SRO must ensure that a final decision is reached in the review and that a copy of the decision is mailed to each of the parties not later than 30 days after the receipt of a request for a review, except that a party may seek a specific extension of time of the 30-day timeline, which the SRO may grant in accordance with State and federal regulations (34 CFR 300.515[b], [c]; 8 NYCRR 200.5[k][2]).

**III. Facts and Procedural History**

The parties' familiarity with the detailed facts and procedural history of this matter, including the IHO's decision, is presumed and will not be recited in detail. Briefly, the CSE convened on June 4, 2018, to formulate the student's IEP for the 2018-19 school year (see generally

Dist. Ex. 1). The parent disagreed with the recommendations contained in the June 2018 IEP and, as a result, notified the district of her intent to unilaterally place the student at iBrain (see Parent Ex. P). In a due process complaint notice, dated July 9, 2018, the parent alleged that the district failed to offer the student a free appropriate public education (FAPE) for the 2018-19 school year (see Parent Ex. A).

An impartial hearing convened on September 20, 2018 and concluded on December 3, 2019 after 12 days of proceedings (Tr. pp. 1-589). In a decision dated July 28, 2021, the IHO determined that the district conceded it had failed to offer the student a FAPE for the 2018-19 school year, that iBrain was an appropriate unilateral placement, and that equitable considerations weighed generally in favor of the parent's request for an award of tuition reimbursement (IHO Decision at pp. 8-15). However, the IHO also determined that it would be inequitable to order the district to fully reimburse the parent for the cost of tuition and transportation of the student at iBrain for a portion of the 2018-19 school year during which some of the student's required related services (vision education services) were not fully implemented (id. at pp. 13-15). As relief, the IHO ordered the district to reimburse the parent for half of the cost of the student's tuition and transportation at iBrain for the period running from July 1, 2018 through September 16, 2018 and ordered the district to fully reimburse the parents for the cost of the student's tuition and transportation at iBrain for the remainder of the 2018-19 school year (id.).

## IV. Appeal for State-Level Review

The following issues presented on appeal must be resolved in order to render a decision in this matter:

1. Whether the IHO erred in determining that the unilateral placement of the student at iBrain was an appropriate placement for the 2018-19 school year;

2. Whether the IHO erred in determining that equitable considerations barred a portion of the award of the cost of tuition and transportation at iBrain for the 2018-19 school year; and

3. Whether the IHO erred in ordering direct payment for the cost of tuition and transportation rather than tuition reimbursement.

## V. Applicable Standards

Two purposes of the IDEA (20 U.S.C. §§ 1400-1482) are (1) to ensure that students with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; and (2) to ensure that the rights of students with disabilities and parents of such students are protected (20 U.S.C. § 1400[d][1][A]-[B]; see generally Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 [2009]; Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206-07 [1982]).

A FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the

IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (Rowley, 458 U.S. at 206-07; T.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 151, 160 [2d Cir. 2014]; R.E. v. New York City Dep't of Educ., 694 F.3d 167, 189-90 [2d Cir. 2012]; M.H. v. New York City Dep't of Educ., 685 F.3d 217, 245 [2d Cir. 2012]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). "'[A]dequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP'" (Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 [2d Cir. 1998], quoting Rowley, 458 U.S. at 206; see T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 253 [2d Cir. 2009]). The Supreme Court has indicated that "[t]he IEP must aim to enable the child to make progress. After all, the essential function of an IEP is to set out a plan for pursuing academic and functional advancement" (Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 580 U.S. __, 137 S. Ct. 988, 999 [2017]). While the Second Circuit has emphasized that school districts must comply with the checklist of procedures for developing a student's IEP and indicated that "[m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not" (R.E., 694 F.3d at 190-91), the Court has also explained that not all procedural errors render an IEP legally inadequate under the IDEA (M.H., 685 F.3d at 245; A.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist., 553 F.3d 165, 172 [2d Cir. 2009]; Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 [2d Cir. 2003]). Under the IDEA, if procedural violations are alleged, an administrative officer may find that a student did not receive a FAPE only if the procedural inadequacies (a) impeded the student's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (c) caused a deprivation of educational benefits (20 U.S.C. § 1415[f][3][E][ii]; 34 CFR 300.513[a][2]; 8 NYCRR 200.5[j][4][ii]; Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525-26 [2007]; R.E., 694 F.3d at 190; M.H., 685 F.3d at 245).

      The IDEA directs that, in general, an IHO's decision must be made on substantive grounds based on a determination of whether the student received a FAPE (20 U.S.C. § 1415[f][3][E][i]). A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" (Rowley, 458 U.S. at 203). However, the "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP" (Walczak, 142 F.3d at 130; see Rowley, 458 U.S. at 189). "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created" (Endrew F., 137 S. Ct. at 1001). The statute ensures an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents" (Walczak, 142 F.3d at 132, quoting Tucker v. Bay Shore Union Free Sch. Dist., 873 F.2d 563, 567 [2d Cir. 1989] [citations omitted]; see Grim, 346 F.3d at 379). Additionally, school districts are not required to "maximize" the potential of students with disabilities (Rowley, 458 U.S. at 189, 199; Grim, 346 F.3d at 379; Walczak, 142 F.3d at 132). Nonetheless, a school district must provide "an IEP that is 'likely to produce progress, not regression,' and . . . affords the student with an opportunity greater than mere 'trivial advancement'" (Cerra, 427 F.3d at 195, quoting Walczak, 142 F.3d at 130 [citations omitted]; see T.P., 554 F.3d at 254; P. v. Newington Bd. of Educ., 546 F.3d 111, 118-19 [2d Cir. 2008]). The IEP must be "reasonably calculated to provide some 'meaningful' benefit" (Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 [2d Cir. 1997]; see Endrew F., 137 S. Ct. at 1001 [holding that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"]; Rowley, 458 U.S. at 192). The student's recommended program must also be provided in the least restrictive environment (LRE) (20 U.S.C. § 1412[a][5][A]; 34 CFR 300.114[a][2][i], 300.116[a][2]; 8 NYCRR 200.1[cc],

200.6[a][1]; see Newington, 546 F.3d at 114; Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 108 [2d Cir. 2007]; Walczak, 142 F.3d at 132).

An appropriate educational program begins with an IEP that includes a statement of the student's present levels of academic achievement and functional performance (see 34 CFR 300.320[a][1]; 8 NYCRR 200.4[d][2][i]), establishes annual goals designed to meet the student's needs resulting from the student's disability and enable him or her to make progress in the general education curriculum (see 34 CFR 300.320[a][2][i], [2][i][A]; 8 NYCRR 200.4[d][2][iii]), and provides for the use of appropriate special education services (see 34 CFR 300.320[a][4]; 8 NYCRR 200.4[d][2][v]).[1]

A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parents, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim (Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]; Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-70 [1985]; R.E., 694 F.3d at 184-85; T.P., 554 F.3d at 252). In Burlington, the Court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA (471 U.S. at 370-71; see Gagliardo, 489 F.3d at 111; Cerra, 427 F.3d at 192). "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it offered the student a FAPE (Burlington, 471 U.S. at 370-71; see 20 U.S.C. § 1412[a][10][C][ii]; 34 CFR 300.148).

The burden of proof is on the school district during an impartial hearing, except that a parent seeking tuition reimbursement for a unilateral placement has the burden of proof regarding the appropriateness of such placement (Educ. Law § 4404[1][c]; see R.E., 694 F.3d at 184-85).

## VI. Discussion

During the impartial hearing, the district did not present a case with regard to whether the student was offered a FAPE, and in fact, conceded that it denied the student a FAPE (see IHO Decision at p. 2; Tr. p. 451). The district has not cross-appealed from the IHO's finding that the district failed to offer the student a FAPE for 2018-19 school year and, therefore, that determination has become final and binding on the parties and will not be further discussed (34 CFR 300.514[a]; 8 NYCRR 200.5[j][5][v]; 279.8[c][4]). Accordingly, I will turn to the district's cross-appeal of the IHO's finding that iBrain was an appropriate unilateral placement for the student.

---

[1] The Supreme Court has stated that even if it is unreasonable to expect a student to attend a regular education setting and achieve on grade level, the educational program set forth in the student's IEP "must be appropriately ambitious in light of his [or her] circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom. The goals may differ, but every child should have the chance to meet challenging objectives" (Endrew F., 137 S. Ct. at 1000).

**A. Unilateral Placement**

The district argues that the IHO erred in finding that the program at iBrain was appropriate to meet the student's needs during the 2018-19 school year. The district asserts that the parents failed to sustain their burden to show their unilateral placement was appropriate because iBrain did not immediately implement the student's program because the school did not have a vision education service provider or a hearing services provider at the start of the 2018-19 school year (Answer and Cross-Appeal ¶¶ 8-12). Additionally, the district asserts that there was insufficient evidence that iBrain provided make-up vision services to cover missed sessions after a vision provider joined the program, and that student progress with vision education services had not been demonstrated. For the reasons discussed below, review of the evidence in the hearing record supports a finding that iBrain provided a program and placement that was appropriate to meet the student's needs during the 2018-19 school year.

A private school placement must be "proper under the Act" (Carter, 510 U.S. at 12, 15; Burlington, 471 U.S. at 370), i.e., the private school offered an educational program which met the student's special education needs (see Gagliardo, 489 F.3d at 112, 115; Walczak, 142 F.3d at 129). A parent's failure to select a program approved by the State in favor of an unapproved option is not itself a bar to reimbursement (Carter, 510 U.S. at 14). The private school need not employ certified special education teachers or have its own IEP for the student (Carter, 510 U.S. at 13-14). Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate" (Gagliardo, 489 F.3d at 112; see M.S. v. Bd. of Educ. of the City Sch. Dist. of Yonkers, 231 F.3d 96, 104 [2d Cir. 2000]). "Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement'" (Gagliardo, 489 F.3d at 112, quoting Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 364 [2d Cir. 2006]; see Rowley, 458 U.S. at 207). Parents need not show that the placement provides every special service necessary to maximize the student's potential (Frank G., 459 F.3d at 364-65). When determining whether a unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether the placement is "reasonably calculated to enable the child to receive educational benefits" (Frank G., 459 F.3d at 364; see Gagliardo, 489 F.3d at 115; Berger v. Medina City Sch. Dist., 348 F.3d 513, 522 [6th Cir. 2003] ["evidence of academic progress at a private school does not itself establish that the private placement offers adequate and appropriate education under the IDEA"]). A private placement is appropriate if it provides instruction specially designed to meet the unique needs of a student (20 U.S.C. § 1401[29]; Educ. Law § 4401[1]; 34 CFR 300.39[a][1]; 8 NYCRR 200.1[ww]; Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist., 773 F.3d 372, 386 [2d Cir. 2014]; C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 836 [2d Cir. 2014]; Gagliardo, 489 F.3d at 114-15; Frank G., 459 F.3d at 365).

The Second Circuit has set forth the standard for determining whether parents have carried their burden of demonstrating the appropriateness of their unilateral placement.

> No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is

6

receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.

(Gagliardo, 489 F.3d at 112, quoting Frank G., 459 F.3d at 364-65).

The parties agree that the student required vision education and hearing services. With respect to the student's vision and hearing needs, briefly, the student had an acquired brain injury "secondary to a Seizure Disorder" and has been diagnosed with cerebral palsy, a severe hearing impairment in the left ear, and "is legally blind" (Dist. Ex. 13 at p. 1). The IEP developed by iBrain for the student's 2018-19 school year also states that the student has a cortical vision impairment and developmental delays (Parent Ex. F at p. 1). The iBrain IEP sets forth more vision and hearing needs information, as well as management needs and goals descriptions for both hearing and vision in several sections of the document (see id. at pp. 4-5, 9-11, 11-12, 13, 14-15, 24, 28-29, 32-33, 43). The student's mother testified that the student was able to see things, that her right eye was better than her left, and that she could make out objects as far as ten feet or so away from her (Tr. pp. 438-39). She further testified that the student had moderate to severe hearing loss in her left ear and used a hearing aid in that ear as well as an "FM unit" (Tr. pp. 437-38).

According to the hearing record, iBrain is a private special education school for students with brain injury and brain related disorders ages 5 to 21 years old (Parent Ex. G at p. 2). All students received the services of a 1:1 paraprofessional to assist them throughout the school day, and iBrain provided a variety of related services, generally in 60-minute sessions, in an extended school day program and offered an extended school year program (id. at pp. 2-14). The student's iBrain IEP recommended three sixty-minute individual sessions of vision education services per week, and five sixty-minute individual sessions of hearing education services per week, to begin July 9, 2018 at the start of the school's 2018-19 school year (Parent Ex. F at p. 43). Additionally, the IEP identified the student's vision and hearing management needs, and detailed goals and short-term objectives specific to the student's vision and hearing education (id. at. pp. 24, 28-29, 32-33). The iBrain IEP also offered significant amounts of physical therapy (PT), occupational therapy (OT), individual and group speech-language therapy, and parent counseling and training (id. at. p. 43). The iBrain IEP further provided for the support of a full-time 1:1 paraprofessional, assistive technology, and daily access to a school nurse as needed (id.). iBrain's IEP placed the student in an 8:1:1 classroom for a "12-month program" during the 2018-19 school year (id.).

The director of special education at iBrain (director) testified that when iBrain's program year began in July 2019 direct vision education and hearing services were not implemented because providers for those services were not yet on staff at iBrain (Tr. pp. 247-48). The director testified that the hearing provider began implementing services in August 2018 and the vision education provider began in September 2018 (id.; see Tr. pp. 304-08). The director further testified

that after a "first vision provider" arrived in mid-September 2018, the student received roughly "five or six" vision education sessions over the next four weeks (rather than 12 sessions) because "we wanted to make sure that everyone had some vision services" until a second provider began at the school (Tr. pp. 348-50). The director also testified that iBrain was in the process of making up all of the students' missed vision education services and was "hopefully, very close to doing so . . . [and] anticipate[d] having all those sessions made up" (Tr. p. 349). The only iBrain quarterly progress report in the hearing record is dated October 21, 2018 and, as the district points out, it does not contain a section on vision education, which according to the director was because there had not been enough vision education sessions conduced to include progress information in the report (Tr. pp. 348, 351; Parent Ex. J).

Although the private school IEP may be helpful in determining what iBrain intended to provide to the student, it is not necessary. As a general matter, private institutions which are not State-approved to provide special education services to students with disabilities—such as iBrain—are not required to follow the same procedural process of developing their own written IEPs for students in the same way as public school districts are (Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 13-14 [1993]), and, furthermore a unilateral placement is not mandated by the IDEA or State law to provide services in compliance with an IEP. Thus, the relatively minor noncompliance with the privately created iBrain IEP is not a basis for denying the parent's request for public funding of the unilateral placement.

Furthermore, to the extent the district argues that iBrain was an inappropriate unilateral placement because it did not offer sufficient related services to meet the student's vision and hearing needs, it is well settled that parents need not show that their unilateral placement provides every service necessary to maximize the student's potential, but rather, must demonstrate that the placement provides education instruction specially designed to meet the unique needs of the student (M.H., 685 F.3d at 252; Gagliardo, 489 F.3d at 112; Frank G., 459 F.3d at 365; Stevens v. New York City Dep't of Educ., 2010 WL 1005165, at *9 [S.D.N.Y. Mar. 18, 2010]). "The test for the private placement 'is that it is appropriate, and not that it is perfect'" T.K. v. New York City Dep't of Educ., 810 F.3d 869, 877–78 [2d Cir. 2016] [citations omitted]). Nevertheless, a review of the evidence in the hearing record demonstrates that iBrain did address the student's vision and hearing needs. As discussed above, although the student did not receive services provided by a vision therapist for a period of time at the beginning of the 2018-19 school year, iBrain otherwise endeavored to make up all missed vision education sessions prior to the end of the school year. Therefore, I concur with the IHO and decline to find that iBrain was not an appropriate placement for the student due to the lack of vision education or hearing services at the beginning of the 2018-19 school year. Overall, iBrain identified the student's special education needs and provided a program that addressed those needs.

### B. Equitable Considerations

The final criterion for a reimbursement award is that the parents' claim must be supported by equitable considerations. Equitable considerations are relevant to fashioning relief under the IDEA (Burlington, 471 U.S. at 374; R.E., 694 F.3d at 185, 194; M.C. v. Voluntown Bd. of Educ., 226 F.3d 60, 68 [2d Cir. 2000]; see Carter, 510 U.S. at 16 ["Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required. Total reimbursement will not be

8

appropriate if the court determines that the cost of the private education was unreasonable"]; L.K. v. New York City Dep't of Educ., 674 Fed. App'x 100, 101 [2d Cir. Jan. 19, 2017]). With respect to equitable considerations, the IDEA also provides that reimbursement may be reduced or denied when parents fail to raise the appropriateness of an IEP in a timely manner, fail to make their child available for evaluation by the district, or upon a finding of unreasonableness with respect to the actions taken by the parents (20 U.S.C. § 1412[a][10][C][iii]; 34 CFR 300.148[d]; E.M. v. New York City Dep't of Educ., 758 F.3d 442, 461 [2d Cir. 2014] [identifying factors relevant to equitable considerations, including whether the withdrawal of the student from public school was justified, whether the parent provided adequate notice, whether the amount of the private school tuition was reasonable, possible scholarships or other financial aid from the private school, and any fraud or collusion on the part of the parent or private school]; C.L., 744 F.3d at 840 [noting that "[i]mportant to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA"]).

Reimbursement may be reduced or denied if parents do not provide notice of the unilateral placement either at the most recent CSE meeting prior to their removal of the student from public school, or by written notice ten business days before such removal, "that they were rejecting the placement proposed by the public agency to provide a [FAPE] to their child, including stating their concerns and their intent to enroll their child in a private school at public expense" (20 U.S.C. § 1412[a][10][C][iii][I]; see 34 CFR 300.148[d][1]). This statutory provision "serves the important purpose of giving the school system an opportunity, before the child is removed, to assemble a team, evaluate the child, devise an appropriate plan, and determine whether a [FAPE] can be provided in the public schools" (Greenland Sch. Dist. v. Amy N., 358 F.3d 150, 160 [1st Cir. 2004]). Although a reduction in reimbursement is discretionary, courts have upheld the denial of reimbursement in cases where it was shown that parents failed to comply with this statutory provision (Greenland, 358 F.3d at 160; Ms. M. v. Portland Sch. Comm., 360 F.3d 267 [1st Cir. 2004]; Berger v. Medina City Sch. Dist., 348 F.3d 513, 523-24 [6th Cir. 2003]; Rafferty v. Cranston Public Sch. Comm., 315 F.3d 21, 27 [1st Cir. 2002]); see Frank G., 459 F.3d at 376; Voluntown, 226 F.3d at 68).

In this matter, the IHO held that it would be inequitable to order the district to pay the full cost of the student's attendance at iBrain during the portion of the 2018-19 school year when vision education services were not fully implemented for the student (IHO Decision at. pp. 13-15). The parent contends that the IHO erred in finding that the delay in the implementation of vision education services at the start of the 2018-19 school year constituted an equitable basis to reduce tuition and transportation reimbursement, and further contends that there are no other equitable considerations that would warrant a reduction or denial of tuition and transportation reimbursement (Req. for Rev. ¶¶ 27, 32, 36-37). The district, as part of its cross-appeal, contends that the parent failed to cooperate with the CSE during the district's efforts to develop an IEP for the student's 2018-19 school year, which should bar an award of tuition and transportation reimbursement entirely (Answer and Cross-Appeal ¶ 13-15). In the alternative, the district contends that the IHO acted appropriately in reducing the tuition and transportation reimbursement order (id. ¶ 16).

Although I am inclined to agree with the parent to the extent that the lack of full implementation of services at iBrain does not constitute an equitable basis to reduce tuition

9

reimbursement, I nonetheless decline to disturb the IHO's equitable reduction because, as the district asserts, there are other equitable considerations that support a reduction in reimbursement.

Testimony from the district's CSE chairperson and documentary evidence establishes that the district contacted the student's parent, as well as the private school the student attended during the 2017-18 school year, on multiple occasions in order to schedule a CSE meeting and obtain information for the development of the student's 2018-19 IEP (Tr. p. 465). On February 14, 2018 a CSE meeting notice was sent to the parent indicating that a CSE meeting had been scheduled for March 29, 2018 at 1:00 p.m. (Tr. p. 471; Dist. Ex. 2). That meeting did not occur, because a reschedule was requested by the private school the student attended at the time (Tr. pp. 471-72). On March 1, 2018, a second CSE meeting notice was sent to the parent indicating that a CSE meeting had been scheduled for April 26, 2018 at 1:00 p.m. (Tr. p. 472; Dist. Ex. 3). The parent informed the CSE that she could not attend that meeting (Tr. p. 474-75; Dist. Ex. 19 at p. 10).

On April 17, 2018 the CSE sent a prior written notice to the parent indicating that it had canceled the April 26, 2018 CSE meeting at the parent's request and had not heard from the parent about re-scheduling the meeting, and also informing the parent that a CSE meeting was now scheduled for May 4, 2018 at 10:30 a.m. (Tr. pp. 475-77; Dist. Ex. 6). The parent wrote a letter to the CSE, dated April 19, 2018, in which she requested a new CSE meeting, to be held at the student's private school with staff from the school, and with the in-person attendance of a district school physician, at any time on a Monday (Tr. p. 499; Parent Ex. O). In the letter, the parent stated that once such a CSE meeting was scheduled, she would provide the CSE with the student's "most recent progress reports and any other documentation for your consideration" (id.). On April 26, 2018 a third CSE meeting notice dated April 17, 2018 was sent to the parent indicating that a CSE meeting had been scheduled for May 4, 2018 at 10:30 a.m. (Tr. p. 477, 495; Dist. Ex. 4).[2]

In a prior written notice, dated April 30, 2018, the CSE responded to the parent's April 19, 2018 request and informed the parent that a new CSE meeting would be scheduled on a Monday per the parent's request with the attendance of a district school physician by telephone, and that although the CSE meeting would not be held at the private school, the private school staff were sent the meeting notice and were welcome to participate (Tr. pp. 499-500; Dist. Ex. 8). Thereafter, a fourth CSE meeting notice dated April 30, 2018 was sent to the parent and the other proposed CSE participants indicating that the CSE meeting had been scheduled for June 4, 2018 at 1:00 p.m. (Tr. pp. 500-02; Dist. Ex. 7). On May 3, 2018 a district social worker telephoned the parent to confirm that she had received notice of the June 2018 CSE meeting, and the parent did so (Tr. pp. 504; Dist. Ex. 19 at p. 8). Between May 23, 2018 and the day of the June 4, 2018 CSE meeting three other district CSE members contacted the parent to remind her of the June 4, 2018 CSE meeting and to confirm that the parent would provide the CSE with the private school progress reports (Tr. pp. 504-06; Dist. Ex. 19 at p. 7).

On the day of the June 4, 2018 CSE meeting district CSE members communicated or attempted to communicate with the student's mother and father as well as staff from the student's private school that she attended during the 2017-18 school year but were unable to secure the

---

[2] According to the district CSE chairperson, she had reason to believe that an attorney, working for many families with students who attended the private school the student attended during the 2017-18 school year, had advised parents to cancel their meetings with the CSE (Tr. pp. 480-84, 493-94; see Dist. Ex. 16).

10

attendance of the parent and any additional CSE members (Tr. pp. 506-09; Dist. Ex. 19 at pp. 6-7).

The CSE went on to develop an IEP for the student after conducting the June 4, 2018 CSE meeting with the CSE members who attended the meeting in person or via telephone, but the student's parents and the staff from the student's private school did not attend the meeting or provide any input to the CSE meeting (Tr. pp. 508-11; see Dist. Ex. 1, 11). Additionally, the June 2018 CSE did not have any response from the student's nonpublic school regarding the student's most recent progress reports although they had been requested on multiple occasions (see Dist. Exs. 1 at pp. 1-6; 19 at pp. 6-9).

Based on the above, the parent's actions impeded the process leading up to the June 2018 CSE meeting, and that, along with the failure to provide private school progress reports and the refusal to attend the June CSE meeting itself after it was re-scheduled to meet the parent's scheduling preferences, was unreasonable. Accordingly, equitable considerations support a reduction in reimbursement and the district's cross-appeal is therefore sustained in part and the award of tuition reimbursement will be reduced by 20 percent (see Donohue v. New York City Dept. of Educ., 2021 WL 4481344, at *11 [S.D.N.Y. Sept. 30, 2021] [upholding an SRO's decision to reduce tuition reimbursement by 25 percent under similar, although slightly more egregious, circumstances].

### C. Parent's Financial Obligation and Ability to Pay

Lastly, the district contends that the IHO's order erred to the extent that the district was directed to fund the cost of the student's tuition and transportation at iBrain for the 2018-19 school year because the parent had not shown an inability to pay for the cost of the student's tuition and transportation and the appropriate remedy is tuition reimbursement. The parent contends that there is no obligation to prove an inability to pay in order to receive direct funding.

It is well settled that parents who reject a school district's IEP and choose to unilaterally place their child at a private school without consent or referral by the local educational agency do so at their own financial risk (Burlington, 471 U.S. at 373-74; Carter, 510 U.S. at 14; Ventura de Paulino v. New York City Dep't of Educ., 959 F.3d 519, 526 [2d Cir. 2020], cert. denied, 141 S. Ct. 1075 [2021], reh'g denied, 141 S. Ct. 1530 [2021]; see S.W. v. New York City Dep't of Educ., 646 F. Supp. 2d 346, 356-58 [S.D.N.Y. 2009] [finding the parent in that matter had no financial standing to sue for direct retrospective payment to private placement where terms of enrollment contract absolved her of responsibility for paying tuition]). In such instances, retroactive reimbursement to parents by a school district is an available remedy under the IDEA (Burlington, 471 U.S. at 370-71; see 20 U.S.C. § 1412[a][10][C][ii]; 34 CFR 300.148; Gagliardo, 489 F.3d at 111; Cerra, 427 F.3d at 192). Alternatively, with regard to fashioning equitable relief, courts have determined that it is appropriate under the IDEA to order a school district to make retroactive tuition payment directly to a private school where: (1) a student with disabilities has been denied a FAPE; (2) the student has been enrolled in an appropriate private school; and (3) the equities favor an award of the costs of private school tuition; but (4) the parents, due to a lack of financial resources, have not made tuition payments but are legally obligated to do so (Mr. and Mrs. A. v. New York City Dep't of Educ., 769 F. Supp. 2d 403, 406 [S.D.N.Y. 2011]; see E.M. v. New York City Dep't of Educ., 758 F.3d 442, 453 [2d Cir. 2014] [noting that "the broad spectrum of equitable

relief contemplated [by] the IDEA encompasses, in appropriate circumstances, a direct-payment remedy" [internal quotation marks omitted]). It has been held that "[w]here . . . parents lack the financial resources to 'front' the costs of private school tuition, and in the rare instance where a private school is willing to enroll the student and take the risk that the parents will not be able to pay tuition costs—or will take years to do so—parents who satisfy the Burlington factors have a right to retroactive direct tuition payment relief" (Mr. and Mrs. A., 769 F. Supp. 2d at 428; see also A.R. v. New York City Dep't of Educ., 2013 WL 5312537, at *11 [S.D.N.Y. Sept. 23, 2013]).

The IHO's order to the district at the conclusion of his decision dated July 28, 2021 reads as follows:

> The District shall provide reimbursement or direct payment to the Unilateral Placement for tuition and transportation from September 16, 2018, for the remainder of the 2018-19 school year upon presentation of properly receipted invoices for same. With respect to tuition and transportation costs from July 1, 2018 through September 16, 2018, the District shall pay 50% of the tuition and transportation for the Unilateral Placement upon presentation of properly receipted invoices for same.

(IHO Decision at p. 15).

With respect to the parent's financial obligation, the hearing record includes an enrollment contract signed by both of the student's parents on June 13, 2018 for the student's attendance at iBrain for the 2018-19 school year (Parent Ex. K). The contract provided that the parents would be responsible for the tuition and supplemental costs for the student's attendance at iBrain (see id.). The hearing record also includes a "school transportation service amendment" referencing a June 2018 contract executed by the student's mother for transportation services for the student to and from iBrain for the 2018-19 school year (Parent Ex. L).

With regard to the parents' ability to pay, since the parents selected iBrain as the unilateral placement and their financial status is at issue, it was the parents' burden of production and persuasion with respect to whether they had the financial resources to "front" the costs of the services (Application of the Dep't of Educ., Appeal No. 21-163; Application of a Student with a Disability, Appeal No. 12-036; Application of a Student with a Disability, Appeal No. 12-004; Application of the Dep't of Educ., Appeal No. 11-130; Application of the Dep't of Educ., Appeal No. 11-106; Application of a Student with a Disability, Appeal No. 11-041). The student's mother testified at the impartial hearing that she had not made any of the payments under the tuition contract she executed with iBrain, despite having established a financial obligation for the costs of the student's tuition at iBrain, as well as the costs of transportation; however, the parent has not demonstrated an inability to pay (see Tr. pp. 442-44). For example, there is no evidence in the hearing record regarding the parents' financial resources, such as a copy of a recent tax return or evidence regarding the parents' assets, liabilities, income, or expenses.

Given the lack of information in the hearing record regarding the parents' financial resources, the IHO erred in ordering order the district to directly fund the student's tuition. Rather,

12

an order for tuition reimbursement upon proof of payment for services delivered is the appropriate remedy and I will modify the IHO's order to that effect below.

**VII. Conclusion**

Having determined that the evidence in the hearing record supports the IHO's determination that the district failed to offer the student a FAPE for the 2018-19 school year and supports the IHO's determinations that iBrain was an appropriate unilateral placement and equitable considerations weighed in favor of a reduction to the parents' request for relief although for different reasons and to a different standard, the necessary inquiry is at an end.

I have considered the remaining contentions, including the parent's claim that the doctrine of the law of the case mandates a particular finding with respect to the appropriateness of the parent's unilateral placement, and find it is unnecessary to address them in light of my determinations above.

**THE APPEAL IS SUSTAINED TO THE EXTENT INDICATED.**

**THE CROSS-APPEAL IS SUSTAINED TO THE EXTENT INDICATED.**

**IT IS ORDERED** that the IHO's Decision dated July 28, 2021 is modified by reversing that portion which ordered the district to directly pay iBrain for the costs of the student's attendance at iBrain for the 2018-19 school year; and

**IT IS FURTHER ORDERED** that, upon proof of payment shown the district shall be required to reimburse the parent for 80% of the costs of the student's attendance at iBrain for the 2018-19 school year, including tuition and costs for related services, a 1:1 paraprofessional and 1:1 nursing services, transportation, and fees.

Dated:     Albany, New York
           October 28, 2021

                                              STEVEN KROLAK
                                              STATE REVIEW OFFICER