Index No.  22 CV 1685 (LGS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDITH MAYSONET and ANTHONY McFARLANE as
Parents and Natural Guardian of A.M., and JUDITH
MAYSONET and ANTHONY McFARLANE, Individually,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

### HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
Attorney for Defendant
100 Church Street, Room 2-192
New York, N.Y.  10007

Of Counsel: Aaron Wiener
Tel: (212) 356-4362
City File No.: 2022-014453

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS .......................................................................................................3

    A.    Formulating A.M.'s Individualized Education Program for the 2018-2019
School Year. ..................................................................................................................3

    B.    Impartial Hearing for Case No. 175153. ......................................................................5

    C.    Office of State Review Appeal No. 21-189. .................................................................6

THE IDEA'S STATUTORY SCHEME.....................................................................................8

LEGAL STANDARD.................................................................................................................9

ARGUMENT ........................................................................................................................... 10

    POINT I
    THE SRO CORRECTLY DECIDED A 20 PERCENT REDUCTION IN FUNDING WAS
    APPROPRIATE, AND HIS DECISION IS ENTITLED TO DEFERENCE.................. 10

        A.    The SRO Properly Found the Equities Favored a Reduction in Funding
Due to Plaintiffs' Obstructive Behavior and Lack of Cooperation with
the CSE Process. ..................................................................................................... 10

        B.    The SRO's Decision that Equitable Considerations Favored a 20
Percent Reduction is Thorough and Well-Reasoned, and is therefore
Entitled to Deference. ............................................................................................. 15

    POINT II
    THE SRO PROPERLY FOUND THAT PLAINTIFFS FAILED TO MEET THEIR
    BURDEN TO DEMONSTRATE FINANCIAL INABILITY TO PAY TUITION COSTS
    AND ARE NOT ENTITLED TO DIRECT FUNDING................................................. 18

CONCLUSION........................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                    **Page(s)**

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*
     458 U.S. 176 (1982)......................................................................................................2, 8, 10

*Bd. of Educ. v. M.N.*
     No. 16-CV-09448, 2017 U.S. Dist. LEXIS 169926 (S.D.N.Y. Oct. 13, 2017)................ 11

*Bettinger v. New York City Bd. of Educ.*
     No. 06-CV-6889, 2007 U.S. Dist. LEXIS 86116 (S.D.N.Y. Nov. 20, 2007).........9, 10, 15

*C.L. v. Scarsdale Union Free Sch. Dist.*
     744 F.3d 826, 840 (2d Cir. 2014).................................................................................. 17

*Carillo v. Carranza*
     2021 U.S. Dist. LEXIS 172246 (S.D.N.Y. Sept. 10, 2021)............................................. 14

*Connors v. Mills*
     34 F. Supp. 2d 795 (N.D.N.Y. 1998).............................................................................. 18

*Donohue v. N.Y.C. Dep't of Educ.*
     2021 U.S. Dist. LEXIS 189873 (S.D.N.Y. Sept. 30, 2021)............................ 11, 12, 16, 17

*E.M. v. N.Y. City Dep't of Educ.*
     758 F.3d 442 (2d Cir. 2014)........................................................................................... 19

*Florence Cty. Sch. Dist. Four v. Carter*
     510 U.S. 7 (1993).............................................................................................................. 9

*J.S. v. Scarsdale Union Free Sch. Dist.*
     826 F. Supp. 2d 635 (S.D.N.Y. 2011)............................................................................ 11

*M.F. v. N.Y.C. Dep't of Educ.*
     2013 U.S. Dist. LEXIS 79181 (S.D.N.Y. June 4, 2013).................................................. 14

*M.H. v. New York City Dep't of Educ.*
     685 F.3d 217 (2d Cir. 2012)............................................................................... 10, 15, 16

*M.W. ex rel. A.W. v. Bd. of Educ. of Enlarged City Sch. Dist. of Middletown*
     2013 U.S. Dist. LEXIS 82808 (S.D.N.Y. June 12, 2013)................................................ 15

*M.W. ex rel. S.W. v. New York City Dep't of Educ.*
     725 F.3d 131 (2d Cir. 2013)........................................................................................... 15

*Mr. & Mrs. "M" v. Ridgefield Bd. of Educ.*
    2007 U.S. Dist. LEXIS 24691 (D. Conn Mar. 30, 2007)....................................... 13

*Mr. & Mrs. A v. New York City Dep't of Educ.*
    769 F. Supp. 2d 403 (S.D.N.Y. 2011)........................................................ 18, 19

*N.B. ex rel. H.B. v. N.Y.C. Dep't of Educ.*
    711 F. App'x 29 (2d Cir. 2017) .............................................................. 8, 16

*Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. Of Mass.*
    471 U.S. 359, 374 (1985)..................................................................... 3, 9

*T.C. v. New York City Dep't of Educ.*
    2016 U.S. Dist. LEXIS 42545 (S.D.N.Y. Mar. 30, 2016) ................................ 15

*Ventura de Paulino v. N.Y.C. Dep't of Educ.*
    959 F.3d 519 (2d Cir. 2020)..................................................................... 9

*Walczak v. Florida Union Free Sch. Dist.*
    142 F.3d 119 (2d Cir. 1998)..................................................................... 10

*Winkelman v. Parma City Sch. Dist.*
    550 U.S. 516 (2007)............................................................................... 8

## **Statutes**

20 U.S.C. § 1400...................................................................................... 8

20 U.S.C. § 1400(d)(1)(A)......................................................................... 8

20 U.S.C. § 1412(a)(10)(C)(iii) ........................................................... 8, 9, 11

20 U.S.C. § 1415(f)(1)(A).......................................................................... 8

20 U.S.C. § 1415(f)(3)(E)(ii) ..................................................................... 8

20 U.S.C. § 1415(i)(2)(C)(iii) .................................................................... 10

20 U.S.C. § 1415(g)(1) ............................................................................. 9

20 U.S.C. §1415(b)(6)(A).......................................................................... 8

N.Y. Educ. Law § 4404(1)(c) ..................................................................... 9

N.Y. Educ. Law § 4404(1)(a) ..................................................................... 8

**<u>Regulations</u>**

34 C.F.R. § 300.322 ................................................................................................. 13

34 C.F.R. § 300.322(d) ............................................................................................ 13

34 C.F.R. § 300.148(d)(3) ........................................................................................ 11

34 C.F.R. § 300.513(a)(2) ...........................................................................................8

8 NYCRR § 200.3(a)(1)(vii) .................................................................................... 13

8 NYCRR § 200.5(j)(4)(ii) ...........................................................................................8

8 NYCRR § 200.5(d)(7) ........................................................................................... 13

## PRELIMINARY STATEMENT

Plaintiffs Judith Maysonet and Anthony McFarlane, individually and on behalf of their child, A.M. (the "Student"), who has been classified as a student with a disability (the "Student"), bring this action pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA") against the New York City Department of Education (the "Department"). Plaintiffs seek the reversal of an administrative decision issued by the New York State Education Department's Office of State Review (the "SRO") which found, among other things, that equitable considerations warranted a 20 percent reduction of the tuition award associated with the Student's private school education for the 2018-2019 school year, and that the Department was responsible for funding the Student's tuition and related services only upon proof of payment by Plaintiffs to the private school.

The Student attended the private school International Academy of Hope ("iHOPE") for the 2017-2018 school year, and Plaintiffs unilaterally placed the Student at another private school, the International Institute for the Brain ("iBRAIN"), for the 2018-2019 school year. Prior to the start of the 2018-2019 school year, in accordance with its obligations under the IDEA, the Department developed recommendations for the Student's education. Plaintiffs did not cooperate with the Department in developing these recommendations, then rejected the Department's findings, and initiated an administrative proceeding by filing a due process complaint.  Plaintiffs sought funding for the Student's iBRAIN tuition and transportation services, and a finding that iBRAIN should be considered the Student's pendency placement. The Impartial Hearing Officer ("IHO") presiding over Plaintiffs' due process complaint issued an interim order finding the correct pendency placement was at a Department school, which the SRO reversed. On remand to the IHO from the SRO, the parties agreed that the Department would fund the Student's tuition and transportation services at iBRAIN for the period covering September 16, 2018 through the end

of the 2018-2019 school year. The Department thereafter funded the Student's tuition and transportation costs from September 16, 2018 through the end of the 2018-2019 school year.

The Plaintiffs' due process complaint remained in dispute with respect to the portion of the 2018-2019 school year lasting from July 9, 2018 to September 16, 2018. After a hearing, a different IHO issued a findings of fact and decision ("FOFD"), which found that (1) the Department had failed to offer the Student a free appropriate public education ("FAPE") for the 2018-2019 school year, (2) that iBRAIN was an appropriate unilateral placement for the Student, and (3) that equitable factors regarding the lack of vision education services at iBRAIN warranted an award of reimbursement to the Plaintiffs for 50 percent of the tuition and transportation costs for the period in dispute, upon presentation of properly documented invoices.

Plaintiffs appealed the IHO's July 28, 2021 FOFD to the SRO, and the Department cross-appealed. The SRO sustained in part both the Plaintiffs' appeal and the Department's cross-appeal. The SRO concluded the Department failed to offer a FAPE to the Student, that iBRAIN was an appropriate unilateral placement, and that the lack of vision education services at iBRAIN did not constitute a proper equitable consideration upon which to reduce the award to Plaintiffs. However, the SRO found that equitable considerations warranted a reduction due to Plaintiffs' obstructing the CSE's process leading to the formation of the Student's Individualized Education Plan ("IEP"). Accordingly, the SRO modified the FOFD by reducing the total award by 20 percent. Lastly, the SRO found that the Department's obligation to fund the Student's tuition and related services was limited to reimbursement upon proof of payment, rather than direct funding to iBRAIN.

Plaintiffs then initiated this action, which is in substance an appeal of the SRO's decision. By Notice dated June 24, 2022, Plaintiffs moved for summary judgment. (ECF No. 18).

The Department submits this Memorandum of Law in support of its Cross-Motion for Summary Judgment and in opposition to Plaintiffs' Motion for Summary Judgment. The Department respectfully requests that the Court affirm the SRO decision and deny Plaintiffs' motion in its entirety. The SRO properly found that Plaintiffs did not cooperate with the CSE in an attempt to frustrate the Department's efforts to create an IEP for the Student, and that reimbursement payments are to be made upon proof of payment by the Plaintiffs. As such, the SRO properly found that Plaintiffs' lack of cooperation justified a 20 percent reduction, and the Court should defer to the SRO's decision, which is thorough, well-reasoned, and fully supported by the underlying record.

## STATEMENT OF FACTS

The Student has been classified as a student with a traumatic brain injury, and therefore is entitled to receive a free and appropriate public education ("FAPE") pursuant to the IDEA. [R 0027].[1]

**A.    Formulating A.M.'s Individualized Education Program for the 2018-2019 School Year.**

For the 2017-2018 school year, A.M. attended the International Academy of Hope ("iHOPE"), a private special education program located in New York City. [R 1011]. To develop an appropriate IEP for the Student for the 2018-2019 school year, the CSE made substantial efforts to schedule a meeting with Plaintiffs at which the Student's IEP would be developed. [R 0016]. On February 14, 2018, the CSE sent Plaintiffs and iHOPE personnel a Meeting Notice informing

---

[1] Citations to fact in this memorandum are made to the record filed at ECF No. 13 rather than the joint statement of fact filed at ECF No. 16-1. Plaintiffs filed the joint statement of fact before the Department had reviewed that version, and without the Department's agreement. The parties have been discussing, and drafting, a revised joint statement. The parties will address the issue in a letter to the Court once a final version is agreed upon.

them that a meeting would be convened on March 29, 2018 to develop A.M.'s 2018-2019 IEP. [R 0016, 0943-45, 1073]. The notice requested that Plaintiffs and iHOPE provide reports, work samples, and assessments that could be used to determine the Student's educational progress and aid in the formulation of an appropriate IEP. [R1073]. The March 29, 2018 meeting did not occur because iHOPE requested to reschedule the meeting. [R 0016].

On March 1, 2018, the CSE sent a second Meeting Notice to Plaintiffs and iHOPE informing them that the meeting had been rescheduled to April 26, 2018. [R 0016, 0946-48]. On April 13, 2018, Plaintiff Judith Maysonet sent an email to the Department, advising that she would not be able to attend the meeting on April 26, 2018, and that she would follow up to reschedule to an agreeable date and time. [R 0016, 1073].

On April 17, 2018, the Department called Plaintiff Maysonet, and left a voicemail to inquire whether she would suggest a new date and time on which to hold the meeting. [R 1072]. The same day, the Department also sent another Meeting Notice to Plaintiffs and iHOPE informing them, the meeting had again been rescheduled to May 4, 2018. [R 0016, 1072]. By letter dated April 19, 2018, Plaintiff Maysonet wrote to the CSE to request that the meeting again be rescheduled, and that the meeting take place on a Monday, at iHOPE, with the in-person attendance of a district school physician. [R 0016]. Plaintiff Maysonet stated that upon scheduling such a meeting, she would provide the CSE with the relevant documentation. [*Id.*].

In response to the April 19, 2018 letter, on April 30, 2018, the CSE contacted the Plaintiffs to inform them that the meeting would be rescheduled to a Monday as requested, and that a district school physician would attend telephonically. [R 0016]. The CSE also informed the Plaintiffs that it could not schedule the meeting to take place at iHOPE without further information regarding the nature and reason for the request, but reiterated that iHOPE staff were welcome to

4

attend and participate in the meeting. [R 0016, 0961-63]. The same day, CSE sent a separate notice to inform Plaintiffs that the meeting was rescheduled to June 4, 2018. [R 0016, 0958-60]. On May 3, 2018, the Mother confirmed to a district social worker that she had received the CSE's April 30, 2018 notice regarding the June 4, 2018 meeting. [R 0016].

CSE members thereafter contacted the Plaintiffs several times in an attempt to secure their attendance at the June 4, 2018 meeting and to obtain copies of the Student's progress reports, but their efforts were rebuffed. [R 0016, 1071]. For example, on May 23, 2018, Plaintiff Maysonet emailed the CSE to advise that A.M.'s progress would be provided in advance of the June 4, 2018 meeting, and did not mention anything about her inability to attend the meeting. [R 1071].

On June 3, 2018, the day before the meeting, the CSE again wrote to Plaintiff Maysonet (copying iHOPE personnel) to remind her that the meeting was scheduled for June 4, 2018, and that the CSE required copies of A.M.'s progress reports in advance. [R 1071]. In the morning of June 4, 2018, before the scheduled meeting time, the CSE called iHOPE personnel and Plaintiffs to determine whether they would attend the meeting and/or provide A.M.'s progress reports, but had to leave voicemails, and did not receive a return call. [R 1070-71]. The CSE then convened the meeting and developed an IEP for A.M.; neither the parents nor iHOPE representatives attended. [R 0016-17]. The CSE received no response from iHOPE regarding A.M.'s progress reports, despite requesting them several times. [R 0017].

**B.      Impartial Hearing for Case No. 175153.**

On June 21, 2018, Plaintiffs sent the Department a Ten Day Notice indicating they intended to place A.M. at iBRAIN for the 2018-2019 school year. [R 0009]. On July 9, 2018, Plaintiffs filed a due process complaint, alleging the Department had failed to offer A.M. a FAPE

for the 2018-2019 school. [R 0044]. Specifically, Plaintiffs contested the propriety of the CSE's recommended related services, and its recommendation that A.M. be placed in a 12:1+(3:1) setting instead of an 8:1:1 setting. [*Id.*].

      IHO Martin Kehoe held several days of hearings between September 20, 2018 and December 3, 2019. [R 0009]. In its summation, the Department did not present an argument that it had offered A.M. a FAPE for the 2018-2019 school year, but argued that the unilateral placement at iBRAIN was not an appropriate placement, and that the balance of equities precluded an award to Plaintiffs. [R 1342]. In a FOFD dated July 21, 2018, the IHO found that the Department had failed to offer A.M. a FAPE for the 2018-2019 school year, and that iBRAIN was an appropriate unilateral placement. [R 0009, 27]. With respect to whether Plaintiffs were entitled to funding for the costs associated with A.M.'s placement at iBRAIN, the IHO considered equitable factors, and concluded they weighed in favor of reducing an award of tuition rather than precluding such an award. [R0035-36]. IHO Kehoe based his finding on the fact that vision education services were unavailable at iBRAIN from the period of July 1, 2018 through September 16, 2018, which posed a risk to A.M.'s progress. [R 0035]. Accordingly, the IHO ordered that the costs of tuition and transportation during the period in which vision education services were unavailable should be shared evenly by the parties. [R 0036]. IHO Kehoe also found that funding payments were to be made by the Department "upon presentation of properly receipted invoices . . . ." [R 0037].

## C.    Office of State Review Appeal No. 21-189.

      Both parties appealed IHO Kehoe's FOFD to the SRO. Despite conceding it failed to offer a FAPE for the 2018-2019 school year, the Department contended that IHO Kehoe erred by finding iBRAIN was an appropriate unilateral placement and by failing to find equitable considerations warranted a total bar to funding. [R 0009]. The Department also contended that

IHO Kehoe erred to the extent he ordered direct payments to be made to iBRAIN rather than reimbursement to the Plaintiffs, as the Plaintiffs had not demonstrated a lack of financial resources. [R 0062-63]. Plaintiffs contended that IHO Kehoe erred by finding equitable considerations favored any reduction in funding. [R 0046].

  After reviewing the underlying record and the parties' submissions, SRO Steven Krolak issued a decision dated October 21, 2021, which upheld the IHO's findings that the Department denied A.M. a FAPE and that iBRAIN was an appropriate unilateral placement. [R 0019]. The SRO also upheld the IHO's finding that a balancing of the equities warranted a reduction in funding for A.M.'s placement at iBRAIN, but based the decision on a different reason, and modified the amount of the reduction. Rather than base the equitable considerations on the availability of vision education services at iBRAIN during period between the July 1, 2018 and September 16, 2018, the SRO found equitable considerations favored a reduction in funding due to the Plaintiffs' obstructing and impeding the CSE's process leading up to the formulation of A.M.'s IEP for the 2018-2019 school year. [R 0017]. Based on the Plaintiffs' obstructive behavior, the SRO found a reduction of 20 percent of the funding for A.M.'s tuition and related services to be appropriate. [R 0017]. The SRO also found that to warrant direct funding to iBRAIN, the Plaintiffs bore the burden of production and persuasion to show an obligation to make tuition payments and their financial inability to do so. [R 0018]. The SRO found that there was a lack of evidence in the record before the IHO to demonstrate the Plaintiffs' financial resources, and therefore reimbursement to the Plaintiffs upon proof of payment was the appropriate remedy. [R 0019].

  Plaintiffs thereafter initiated the instant action, seeking reversal of the SRO's decision with respect to the equitable reduction of 20 percent during the period of July 1, 2018

7

through September 16, 2018, and with respect to the award of reimbursement only upon proof of payment.

## THE IDEA'S STATUTORY SCHEME

The IDEA ensures "that all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). School districts provide a FAPE when the district makes recommendations, set forth in a student's IEP, that are reasonably calculated to meet the Student's needs. *N.B. ex rel. H.B. v. N.Y.C. Dep't of Educ.*, 711 F. App'x 29, 32 (2d Cir. 2017) (citing *Rowley*, 458 U.S. at 206–07).

If a parent wishes to challenge the recommendations made in a student's IEP, *i.e.*, believes that the district failed to offer a FAPE to their child, he or she may file a due process complaint outlining the alleged issues with the recommended program. *See* 20 U.S.C. §1415(b)(6)(A). Parents may also allege a denial of FAPE based on procedural violations of the IDEA. However, if procedural violations are alleged, an administrative officer may find that a student did not receive a FAPE only if the procedural inadequacies "(a) impeded the student's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (c) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii); 34 C.F.R. § 300.513(a)(2); 8 NYCRR § 200.5(j)(4)(ii); *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525–26 (2007). Therefore, a school district can be found to have denied FAPE when an IEP is created in the parent's absence, but an award may be reduced based on the parent's unreasonable behavior. 20 U.S.C. § 1412(a)(10)(C)(iii).

The claims of a parent challenging an IEP will then be considered at an administrative hearing presided over by an IHO. *See* 20 U.S.C. § 1415(f)(1)(A); N.Y. Educ. Law

§ 4404(1)(a).  In New York State, an IHO's decision may then be appealed to the New York State Education Department's Office of State Review, where a State Review Officer will independently review the IHO's findings and decision.  20 U.S.C. § 1415(g)(1); N.Y. Educ. Law § 4404(1)(c). An aggrieved party may then appeal the SRO's decision to a district court.

If a parent unilaterally places his or her child at a private school during the course of the administrative proceeding, the parent can obtain funding for the placement. However, parents can only obtain funding so long as the parent satisfies a three-factor test commonly referred to as the "*Burlington-Carter*" test, which requires a showing that: "(1) the school district's proposed placement violated IDEA . . . (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." *See Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526-27 (2d Cir. 2020) (quoting *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. Of Mass.*, 471 U.S. 359, 374 (1985)); *see also Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993). However, reimbursements may be reduced or denied based on equitable considerations (*i.e.*, under the third prong of the *Burlington-Carter* test) if: "(i) parents fail to raise the appropriateness of an IEP in a timely manner, (ii) fail to make their child available for evaluation by the district, or (iii) upon a finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii).

## LEGAL STANDARD

"While an IDEA appeal is in the form of a summary judgment motion, the existence of a genuine issue of material fact will not result in a denial." *Bettinger v. New York City Bd. of Educ.*, No. 06-CV-6889, 2007 U.S. Dist. LEXIS 86116, at *4 (S.D.N.Y. Nov. 20, 2007). "Though the parties in an IDEA action may call the procedure 'a motion for summary judgment,' the procedure is in substance an appeal from an administrative determination, not a summary judgment

[motion]." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012). "Instead, the federal court reviewing an administrative decision under IDEA bases its decision on an independent review of the record using a 'preponderance of the evidence' standard." *Bettinger*, 2007 U.S. Dist. LEXIS 86116, at *5; 20 U.S.C. § 1415(i)(2)(C)(iii).

Congress' provision of "independent" judicial review in IDEA cases is not construed as "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). "While federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998) (quoting *Rowley*, 458 U.S. at 206). When, as here, the IHO and SRO reach conflicting conclusions, courts "must defer to the reasoned conclusions of the SRO as the final state administrative determination." *M.H.*, 685 F.3d at 246.

## ARGUMENT

### POINT I

**THE SRO CORRECTLY DECIDED A 20 PERCENT REDUCTION IN FUNDING WAS APPROPRIATE, AND HIS DECISION IS ENTITLED TO DEFERENCE.**

**A.   The SRO Properly Found the Equities Favored a Reduction in Funding Due to Plaintiffs' Obstructive Behavior and Lack of Cooperation with the CSE Process.**

As noted above, "reimbursements may be reduced or denied when: (i) parents fail to raise the appropriateness of an IEP in a timely manner, (ii) fail to make their child available for evaluation by the district, or (iii) upon a finding of unreasonableness with respect to actions taken

10

by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii). Therefore, even when a parent prevails with respect to prongs I and II of the *Burlington-Carter* test, courts may still reduce or entirely deny tuition funding based on upon a finding that actions taken by the parents were uncooperative or otherwise unreasonable. *See id.*; 34 C.F.R. § 300.148(d)(3).

        The authority to grant reimbursement is discretionary, and courts have "broad discretion to consider the range of all relevant facts in determining whether and to what extent awarding relief is equitable." *See J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 671 (S.D.N.Y. 2011). Indeed, "one such consideration is whether 'parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA.'" *See Bd. of Educ. v. M.N.*, No. 16-CV-09448, 2017 U.S. Dist. LEXIS 169926, at *27 (S.D.N.Y. Oct. 13, 2017). Further, "whether parents 'cooperated with the CSE' by 'provid[ing] private evaluations, participat[ing] in the IEP meeting, [and] visit[ing] the proposed placement[s] is relevant to determining whether equities favor reimbursement.'" *Id.* at *37 (quoting *M.H,* 685 F.3d at 254).

        In a case based on facts strikingly similar to the instant matter, the district court found that equitable considerations favored a reduction in funding where a parent "made it difficult for the district to work with him to prepare for [the] Student's . . . IEP." *Donohue v. N.Y.C. Dep't of Educ.*, No. 20-CV-1942, 2021 U.S. Dist. LEXIS 189873, at *31-32 (S.D.N.Y. Sept. 30, 2021). In *Donohue*, just as here, a parent requested the CSE reschedule its IEP meeting several times, and refused to provide relevant progress reports despite multiple requests from the CSE. *Id*. at *5-15. After the CSE rescheduled the IEP meeting several times, and endeavored to accommodate the plaintiff's requests regarding the location and attendance of certain personnel at the meeting, the plaintiff ultimately informed the CSE he would not appear for the meeting. *Id*. The CSE subsequently formulated an IEP for the student, and the plaintiff unilaterally placed the student in

a private school. *Id*. at *15. The plaintiff then filed a due process complaint, and after appeal from the IHO, the SRO found that the plaintiff's actions were unreasonable, primarily due to his refusal to provide the CSE with relevant documentation without justification, and a pattern of requests to reschedule the CSE meeting. *Id*. at *20. Based on the foregoing, the SRO found that equitable considerations warranted a reduction of the costs of attendance at the private school. *Id*.

The plaintiff then sought review of the SRO's decision. The court found that the factors relied upon by the SRO, including the parent's repeated rescheduling of the CSE meeting and refusal to provide relevant documentation, constituted unreasonable conduct warranting a reduction of the tuition award. *Donohue*, 2021 U.S. Dist. LEXIS 189873, at *29. Based on the Court's finding of unreasonable conduct on the part of the Plaintiff, the Court upheld the SRO's decision that equitable considerations favored a reduction. *Id*. at *30.

Just as in *Donohue*, the record before this Court demonstrates Plaintiffs' failure to cooperate with the CSE's planning for the 2018-2019 school year. Plaintiffs repeatedly and without explanation failed to cooperate with the CSE in its attempts to schedule a meeting to prepare an IEP for the Student and gather requested documentation about the Student's educational progress. Mindful of the fact that the IDEA is "intended to be a collaborative process between school districts and families," the CSE attempted to accommodate the Plaintiffs by rescheduling the meeting multiple times, and repeatedly reaching out to Plaintiffs prior to the date on which the meeting eventually went forward. *Id*. at *32 (citation omitted). Here, the Plaintiffs did not notify the CSE that they would not attend the meeting, nor did they provide progress reports or attempt to explain their failure to do so.

Rather than acknowledge their part in impeding the process of formulating the Student's IEP for the 2018-2019 school year, Plaintiffs argue that the blame for their non-

attendance lies instead with the CSE for failing to take sufficient affirmative steps to secure their attendance at the June 4, 2018 meeting. Pltf.s' Mem., at p. 10. Plaintiffs do not explain the basis for their contention, and it is unclear what further efforts Plaintiffs allege the CSE should have taken to allow them to participate or attend the meeting. Indeed, a CSE cannot force an unwilling parent to attend a meeting of the CSE, and going forward in their absence is appropriate where the parents expressly, or impliedly through their behavior, indicate they will not attend. *See* 34 C.F.R. § 300.322(d). Accordingly, when the CSE rescheduled the meeting to June 4, 2018 and the Plaintiffs did not request an alternate date, further rescheduling efforts were certain to be futile, and were unnecessary. *See Mr. & Mrs. "M" v. Ridgefield Bd. of Educ.*, No. 05-CV-584, 2007 U.S. Dist. LEXIS 24691, at *18 (D. Conn Mar. 30, 2007) (holding that relevant regulations do not require school boards to "accommodate an infinite number of parental requests for an alternative time.").

Even though the CSE did not accommodate Plaintiffs' unexplained requests regarding the meeting location and in-person attendance of a district physician, the CSE complied with its obligations under federal law. While the CSE is directed to "take steps to ensure that one or both of the parents . . . are present at each IEP Team meeting or are afforded the opportunity to participate," there is no requirement that the CSE accommodate every request made by a parent. 34 C.F.R. § 300.322. Relevant regulations set out the mandated members of a CSE, which specify that a school physician shall be a member of a CSE if requested by a parent; however, there is no requirement that the physician's attendance be in-person rather than telephonically. 8 NYCRR § 200.3(a)(1)(vii).[2] Requests regarding the format of the CSE meeting that amount to "nothing more

---

[2] While 8 NYCRR § 200.5(d)(7) states that "the school district and the parent may agree to use alternative means of participation, such as videoconferences or conference telephone calls" Plaintiffs offered no justification for the in-person attendance of the district physician.

than pretext to set up an argument that the child was denied a FAPE by virtue of alleged procedural defalcations" are insufficient to show the CSE failed to comply with its obligations regarding parental involvement. *Carillo v. Carranza*, No. 20-CV-4639, 2021 U.S. Dist. LEXIS 172246, at *38 (S.D.N.Y. Sept. 10, 2021). Here, such pretextual requests include at minimum the Plaintiffs' request for in-person attendance of a district physician and request to hold the CSE meeting at iHOPE.

With respect to the Plaintiffs' failure to provide the Student's iHOPE progress reports to the CSE, Plaintiffs' argument that they have no control over iHOPE is misleading at best. Pltf.s' Mem., at p. 13. As the SRO found, the CSE made repeated requests to the Plaintiffs and iHOPE that the progress reports be provided in advance of the CSE meeting, but received none. [R 0017]. Plaintiffs' proposition that a parent, who has contracted with a private school to provide education services, has *no* control over what that private school does with their child's progress reports should be squarely rejected. Nothing in the record suggests the Plaintiffs made any efforts to obtain the reports themselves from iHOPE, or that they made any requests that iHOPE provide the reports directly to the CSE. In fact, it is reasonable to infer that the Plaintiffs had copies of the progress reports in their control prior to the CSE meeting—obviating iHOPE's involvement—when Plaintiffs affirmed that they "would provide the CSE with the Student's 'most recent progress reports and any other documentation . . . .'" once a meeting had been scheduled. [R 0016]. Certainly, Plaintiffs did not indicate at the time that there was any issue in obtaining the reports. Accordingly, the SRO correctly found that the Plaintiffs, through their own actions, impeded and obstructed the CSE process by failing to provide the progress reports.

Taken together, it is beyond dispute that Plaintiffs obstructed the Department's efforts to meet its obligations under the IDEA. *Compare M.F. v. N.Y.C. Dep't of Educ.*, No. 11-

CV-6526, 2013 U.S. Dist. LEXIS 79181, at *34–37 (S.D.N.Y. June 4, 2013) (parent fully cooperated with the Department when the record showed that the parent communicated with the Department, attended the meeting of the CSE, asked questions about the IEP, visited the recommended placement for her child, and testimony was entered into evidence showing the Plaintiff had acted in good faith at all times) *with Bettinger*, 2007 U.S. Dist. LEXIS 86116 (denying tuition funding due to parents' failure to engage with the Department after the Department recommended a placement for their child).

Accordingly, given Plaintiff's conduct, this Court should find that the SRO's decision to reduce any award to Plaintiffs on equitable grounds was appropriate.

**B.     The SRO's Decision that Equitable Considerations Favored a 20 Percent Reduction is Thorough and Well-Reasoned, and is therefore Entitled to Deference.**

Under applicable law, because the SRO's decision was thorough and well-reasoned, it is entitled to deference from this Court.  As discussed *supra*, the "role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *M.H.*, 685 F.3d at 240. Deference to the SRO is appropriate in light of federal courts' "lack of specialized knowledge and educational expertise." *M.W. ex rel. S.W. v. New York City Dep't of Educ.*, 725 F.3d 131, 139 (2d Cir. 2013). Such deference "is particularly appropriate" when the SRO conducts a "thorough review of the entire record that was before the IHO and clearly explain[s] the bases for his [or her] conclusions." *M.W. ex rel. A.W. v. Bd. of Educ. of Enlarged City Sch. Dist. of Middletown*, No. 12-CV-1476, 2013 U.S. Dist. LEXIS 82808, at *23 (S.D.N.Y. June 12, 2013).

The quality of an opinion depends on its persuasiveness, as determined by whether it is "well-reasoned" and whether it "was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *S.W.*, 725 F.3d at 139; *T.C. v. New York City Dep't of Educ.*, No. 15-CV-3477, 2016 U.S. Dist. LEXIS 42545, at *15–16 (S.D.N.Y. Mar. 30,

2016). Importantly, when seeking to overturn an SRO decision, the parent bears the burden of demonstrating that "the decision was insufficiently reasoned or supported" and therefore undeserving of deference. *N.B.*, 711 F. App'x at 32 (citing *M.H.*, 685 F.3d at 225, n.3).

Here, in a well-reasoned discussion, SRO Krolak closely examined A.M.'s unique background and needs, the sufficiency of the iBRAIN program in meeting her needs, and the record before the IHO with respect to the Plaintiffs' financial ability to make tuition payments. [R 0007-19]. The SRO considered the IHO's decision regarding a balancing of equitable considerations and determined the IHO erroneously found the lack of vision education services at iHOPE constitute a proper basis upon which to reduce Plaintiffs' award, but found other equitable factors ultimately supported a reduction. Along this line, the SRO considered, in great detail, the events leading up to the June 4, 2018 meeting, noting each of the Plaintiffs requests to the CSE, as well as the CSE's responses to Plaintiffs' requests. [R 0016-17].

The SRO also compared the Plaintiffs' actions in this case to those in the similar *Donohue* case described in Section I(A), *supra*, and issued a decision in accordance with the holdings in that case. [R 0017]. It is notable that even after finding the facts of this case were substantially similar to those of the *Donohue* case, the SRO independently arrived at what he believed to be an appropriate remedy, rather than blindly applying a reduction that had already been approved by this Court. In examining the Plaintiffs' conduct and arriving at the decision that a 20 percent reduction was appropriate, the SRO drew from his experience overseeing IDEA disputes, exactly the type of decision owed deference by this Court.

Plaintiffs, however, argue that SRO Krolak's decision should not be afforded deference because, they claim, the decision was not rooted in educational policy or the IDEA. Pltf.s' Mem., at p. 14. In support of this contention, Plaintiffs argue that there was insufficient

evidence before the SRO to demonstrate how the Plaintiffs' failure to attend the June 4, 2018 CSE meeting obstructed the process leading to the development of the Student's IEP. *Id*. Plaintiffs attempt to sidestep the SRO's thoughtful and detailed consideration of the facts showing the CSE's repeated efforts to (1) accommodate Plaintiffs' requests to reschedule, (2) understand the reasons for Plaintiffs' requests to hold the CSE meeting at iHOPE with in-person rather than telephonic attendance of a district physician, and (3) the failure to provide the necessary progress reports. [R 0016-17].

Rather than only considering the failure to attend the June 4, 2018 CSE meeting, as the Plaintiffs argue, the SRO explicitly also based his decision on "the parent's actions . . . *leading up to* the June 2018 CSE meeting . . . along with the failure to provide private school progress reports . . . ." [R 0017] (emphasis added). Indeed, as this Court has previously held, where a parent is "unreasonably difficult and frustrating for district personnel to work with," as was the case here, a SRO decision to reduce a funding award based on equitable considerations is entitled to deference. *Donohue*, 2021 U.S. Dist. LEXIS 189873, at *31-32; *see also C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014).

Accordingly, because the SRO applied the appropriate legal standards to the procedural and evidentiary matters below, and issued a thorough and well-reasoned decision, the SRO's decision to reduce Plaintiffs' award by 20 percent is entitled to deference and should be upheld.

## POINT II

## THE SRO PROPERLY FOUND THAT PLAINTIFFS FAILED TO MEET THEIR BURDEN TO DEMONSTRATE FINANCIAL INABILITY TO PAY TUITION COSTS AND ARE NOT ENTITLED TO DIRECT FUNDING.

Equitable considerations warrant denying or reducing a parent's request for relief where there is no proof that the parents have a legal obligation to pay for the services for which they seek payment. *See Mr. & Mrs. A v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 406 (S.D.N.Y. 2011). In *Mr. and Mrs. A*, the court noted that "the school district *could be* required, under [20 U.S.C.] § 1415, 'to pay the tuition directly' to the private school': once the *Burlington* prerequisites relative to a non-approved private school are met, and a parent shows that his or her financial circumstances" eliminate the possibility of the parent paying tuition costs in a unilateral placement and seeking reimbursement. *Id*. at 426 (quoting *Connors v. Mills*, 34 F. Supp. 2d 795, 805-06 (N.D.N.Y. 1998)) (emphasis added).

Indeed, though courts have held that the IDEA may authorize a retroactive direct tuition remedy, such as direct payment to the private school, it is only granted in appropriate circumstances where plaintiffs meet their burden to demonstrate financial inability. *See id.* at 428 ("Where . . . parents lack the financial resources to 'front' the costs of private school tuition, and in the rare instance where a private school is willing to enroll the student and take the risk that the parents will not be able to pay tuition costs – or will take years to do so – parents who satisfy the *Burlington* factors have a right to retroactive direct tuition payment relief."). Direct payment to the private school is therefore an equitable remedy available to parents who prove an inability to afford tuition costs out-of-pocket. *See, e.g.*, *id.*; *see also Connors*, 34 F. Supp. 2d at 806 (denying award of direct funding to school where the plaintiff presented no evidence that she was unable to front the tuition costs).

Here, during the administrative proceedings, Plaintiffs failed to demonstrate a lack of financial resources—or introduce any evidence concerning their financial status—that would justify an award of direct payment to iBRAIN. In his analysis, the SRO notes that "there is no evidence in the hearing record regarding the parents' financial resources, such as a copy of a recent tax return or evidence regarding the parents' assets, liabilities, income, or expenses." [R 0018]. The SRO noted that Plaintiffs executed an enrollment contract with iBRAIN, which sets out their responsibility for "the tuition and supplemental costs for the Student's attendance at iBrain." [*Id.*] Despite executing such a contract, however, Plaintiffs did not offer any evidence demonstrating financial hardship before the IHO or the SRO. Indeed, Plaintiffs do not in the instant matter point to any evidence in the record that demonstrates Plaintiffs attempted, much less met their burden of showing that they lack the financial resources to front the costs of private school tuition and related services.

Instead, Plaintiffs argue in their moving papers that the SRO misapplied the holding of *Mr. & Mrs. A*, which Plaintiffs assert does not stand for the proposition that "only if the parent is financially unable to front the tuition costs, are they entitled to direct retrospective pay by the district." Pltf.s' Mem., at p. 16. Not only is Plaintiffs' reading of *Mr. & Mrs. A* erroneous, but Plaintiffs also fail to explain what differences set this case apart and render *Mr. & Mrs. A* inapplicable such that Plaintiffs are entitled to direct funding. *See Mr. & Mrs. A*, 769 F. Supp. 2d at 428; *see also E.M. v. N.Y. City Dep't of Educ.*, 758 F.3d 442, 453 (2d Cir. 2014) (affirming the plain reading of *Mr. & Mrs. A* that only "in appropriate circumstances, a direct-payment remedy" is provided) (internal quotation marks omitted).

Thus, the SRO correctly applied the court's analysis of *Mr. & Mrs. A* and appropriately determined that Plaintiffs have not made any showing of financial hardship to

warrant an award of direct funding of the tuition costs for the 2018-2019 school year at iBRAIN. This part of the SRO decision is also thorough and well-reasoned and should also be upheld by the Court.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment, grant Defendant's cross-motion, dismiss the Complaint in its entirety, and grant Defendant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
July 16, 2022

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
  City of New York
Attorney for Defendant
100 Church Street
New York, NY 10007
(212) 356-4362
awiener@law.nyc.gov

By:    /s/ Aaron Wiener
Aaron Wiener
Assistant Corporation Counsel