UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JUDITH MAYSONET and ANTHONY McFARLANE,
as Parents and Natural Guardians of A.N., and
JUDITH MAYSONET and ANTHONY McFARLANE,
Individually,                                                                                  22-cv-01685 (LGS)

                              Plaintiff(s),

         -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                              Defendants.
-------------------------------------------------------------------------X

**Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary**
<u>**Judgment and in Further Reply to Defendants' Opposition**</u>

                                                            Respectfully Submitted,

                                                            Ashleigh C. Rousseau, Esq. [5801923]
                                                            Rory J. Bellantoni, Esq. [RB 2901]
                                                            *Attorneys for the Plaintiff(s)*
                                                            Brain Injury Rights Group, Ltd
                                                            300 East 95th Street, Suite 130
                                                            New York, New York 10128
                                                            ashleigh@pabilaw.org
                                                            rory@pabilaw.org

# TABLE OF CONTENTS

*PRELIMINARY STATEMENT*..................................................................................*1*

*LEGAL STANDARD*..............................................................................................*1*

*ARGUMENT*...........................................................................................................*2*

*POINT I: THE DOE CONCEDED THAT THEY DID NOT PROVIDE A.M. WITH A FAPE FOR THE 2018-19 SCHOOL YEAR*.............................................................................*2*

*POINT II: THE SRO'S DECISION TO REDUCE PLAINTIFF'S RELIEF BY 20% WAS ERRONEOUS AND SHOULD BE REVERSED* ...............................................................*2*

    A.   **The Parents' Attendance at the CSE Meeting was Not Required, Nor was Their Lack of Attendance Obstructive**........................................................................................**4**

    B.   **Parents are Not Required to Provide Progress Reports** ...............................................**6**

*POINT IV: THE PARENTS HAVE MET THEIR BURDEN AND ARE ENTITLED TO RECEIVE DIRECT FUNDING*.........................................................................................*8*

*CONCLUSION* ......................................................................................................*11*

# TABLE OF AUTHORITIES

**CASES**

*Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 281 F. Supp. 2d 710 (S.D.N.Y. 2003) ..................................1

*Bd. of Educ. v. M.N.*, No. 16-CV-09448, 2017 U.S. Dist. LEXIS 169926 (S.D.N.Y. 2017) ........................................6

*Connors v. Mills*, 34 F.Supp.2d 795 (N.D.N.Y. 1998) ....................................................................................8, 10

*D.C. v. Klein Indep. Sch. Dist.*, 860 Fed. Appx. 894 (5th Cir. 2021) ...............................................................3

*Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038 (9th Cir. 2013) ....................................................................5

*E. Z.-L. ex rel. R.L.,* 763 F. Supp. 2d 584 (S.D.N.Y. 2011) ..............................................................................5

*Florence County School Dist. Four*, 510 U.S. 7 (1993) ...................................................................................2

*Frank G.,* 459 F.3d 356 (2d Cir. 2006) ....................................................................................................9, 10

*Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105 (2d Cir. 2007) ..............................................................2

*J.E. v. New York City Dep't of Educ.*, 229 F.Supp.3d 223 (S.D.N.Y. 2017) ......................................................3

*Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*, 550 F. Supp. 2d 420 (S.D.N.Y. 2008) .....................1, 2

*M.H. v. New York City Dep't of Educ.,* 685 F.3d 217 (2d Cir. 2012) .................................................................6

*M.M. ex rel. A.M. v. New York City Dep't of Educ. Region 9 (Dist.2)*, 583 F. Supp. 2d 498 (S.D.N.Y. 2008) .............5

*Mr. & Mrs. A v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403 (S.D.N.Y. 2011) ........................................8

*N.R. v. N.Y.C. Dept. of Educ.*, 2009 U.S. Dist. LEXIS 27273 (S.D.N.Y. 2009) ..................................................3

*Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985) ..............................................................................................................................................2, 10

*Still v. DeBuono*, 101 F.3d 888 (2d Cir. 1996) ...............................................................................................10

*T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145 (2d Cir. 2014) ......................................................................10

*Wall by Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501 (E.D.N.Y. 1996) ...........................................1


**STATUTES**

19 Fed. Proc., L. Ed. § 47:22 .....................................................................................................................3

20 U.S.C. §1415(b)(1) ...............................................................................................................................4

20 U.S.C. §1415(i)(2)(C)(iii) ......................................................................................................................9

34 C.F.R. § 300.304 ..................................................................................................................................2

34 C.F.R. §300.321(a)(1) ...........................................................................................................................4

34 C.F.R. §300.322(a) ...............................................................................................................................5

34 C.F.R. §300.501(b)(1) ...........................................................................................................................4

8 N.Y.C.R.R. § 200.4(b)(3) ........................................................................................................................2

8 N.Y.C.R.R. §200.3(a)(1) ..........................................................................................................................4

8 N.Y.C.R.R. §200.5(d) ..............................................................................................................................4

Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1043 (4th ed. 2021) ...........................................3

Restatement (Third) of Restitution and Unjust Enrichment ...............................................................................3

## PRELIMINARY STATEMENT

Judith Maysonet and Anthony McFarlane ("Parents" or "Plaintiffs"), as Parents and Natural Guardians of A.M., and Judith Maysonet and Anthony McFarlane, Individually, respectfully submit this Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Further Reply in Support of Plaintiffs' Motion for Summary Judgment. Plaintiffs respectfully contend that the SRO misinterpreted the IDEA and relevant case law in ordering a twenty-percent (20%) reduction in the Parents' award. Defendants "candidly conceded" that they failed to offer A.M. a FAPE during the 2018-2019 SY in the underlying administrative proceedings. The SRO properly found that the Parent's unilateral placement was appropriate. Thus, Plaintiffs contend that they are entitled to full funding for the tuition and related services, including special transportation, offered to A.M.

## LEGAL STANDARD

Courts have noted that "[s]ummary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions," but that "[t]he inquiry... is not directed to discerning whether there are disputed issues of fact, but whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*, 550 F. Supp. 2d 420, 429 (S.D.N.Y. 2008); *Wall by Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501, 508 (E.D.N.Y. 1996); see also *Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 281 F. Supp. 2d 710 (S.D.N.Y. 2003).

While many refer to the necessary inquiry as a "three-part" or "three-prong" test, some Courts correctly observe that the Supreme Court actually established a ***two-part*** test to determine whether a party is entitled to reimbursement: "(1) was the IEP proposed by the school district inappropriate; [and] (2) was the private placement appropriate to the child's needs." *Jennifer D. ex*

*rel. Travis D.*, 550 F. Supp. 2d at 429, citing *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 111–12 (2d Cir. 2007) (citing *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985). If the two-part *Burlington* test is satisfied, the Court has the discretion to consider relevant equitable factors in fashioning relief. *Jennifer D. ex rel. Travis D.*, 550 F. Supp. 2d at 429, citing *Gagliardo*, 489 F.3d at 112 (citing *Florence County School Dist. Four*, 510 U.S. 7, 16 (1993). *See also,* 34 C.F.R. § 300.304, 8 N.Y.C.R.R. § 200.4(b)(3).

**ARGUMENT**

**POINT I: THE DOE CONCEDED THAT THEY DID NOT PROVIDE
A.M. WITH A FAPE FOR THE 2018-19 SCHOOL YEAR**

In the administrative hearings on this matter, Defendants conceded *Burlington* Prong I by affirming **on the record** that they did not provide A.M. with a FAPE for the 2018-19 SY. [R 283], [R 315]. In SRO No. 21-189, the SRO definitively states that "the district has not cross-appealed from the IHO's finding that the district failed to offer the student a FAPE for 2018-19 school year and, ***therefore, that determination has become final and binding on the parties and will not be further discussed***." [R 11 (emphasis added)]. Regarding Prong II, the SRO holds that a "review of the evidence in the hearing record supports a finding that iBRAIN provided a program and placement that was appropriate to meet the student's needs during the 2018-2019 [SY]." [R 11]. Thus, Prongs I and II of the *Burlington/Carter* framework are not at issue in this case, as Plaintiffs' Complaint seeks review of that portion of the SRO's decision that reduced Plaintiffs' award and made relief contingent upon proof of payment. In their Cross-Motion, Defendants now raise Prong I defenses for their failure to provide a FAPE after "candidly conceding" it had failed in the first instance. [R 24].

**POINT II: THE SRO'S DECISION TO REDUCE PLAINTIFF'S RELIEF
BY 20% WAS ERRONEOUS AND SHOULD BE REVERSED**

Given that both the IHO and SRO have determined that both *Burlington/Carter* Prongs I and II favor the Parents, the only issue left in this case concerns Prong III, equitable considerations.

Once a school district has conceded that it failed to provide a student with a FAPE under the IDEA, it is then precluded from asserting that the equities weigh in its favor. *See N.R. v. N.Y.C. Dept. of Educ.*, 2009 U.S. Dist. LEXIS 27273, \*20-21 (S.D.N.Y. 2009). The Restatement (Third) of Restitution and Unjust Enrichment explains that a party who engages in inequitable conduct "may forfeit the right to a judicial determination of what 'equity and good conscience' require of the other party to the transaction."[1] *See also,* Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1043 (4th ed. 2021) (noting that after the merger of law and equity, "the maxims of equity continue to be a factor in determining both the plaintiff's right to be heard on a claim for equitable relief," including "the notion that a party seeking equitable relief must not have "unclean hands'"), cited in *D.C. v. Klein Indep. Sch. Dist.*, 860 Fed. Appx. 894, 911, fn. 10 (5th Cir. 2021). Here, the DOE has undoubtedly conceded that they failed to provide A.M. with a FAPE for the 2018-2019 SY, thereby admitting that they engaged in inequitable conduct. Thus, Defendants have forfeited their right to request equitable relief or to assert that the equities weigh in their favor.

Even assuming that Defendants can bring an argument that the equities favor a reduction in relief, their argument holds no weight. A reduction of relief in an IDEA proceeding *may* be warranted by equitable considerations in cases where the parents frustrate the IEP development process by failing to timely raise the appropriateness of an IEP, failing to make their child available for an evaluation, or otherwise acting unreasonably. *C.L.*, 744 F.3d at 840. Regarding the latter, parents can be deemed to have acted unreasonably if they obstructed the district's efforts to meet their obligations under IDEA and offer a FAPE to the child. *Id.*, see also*, J.E. v. New York City Dep't of Educ.*, 229 F.Supp.3d 223, 239–40 (S.D.N.Y. 2017).

---

[1] Glenn A. Guarino et al., *Misconduct of applicant; "clean hands" doctrine as consideration in granting injunctive relief*, 19 Fed. Proc., L. Ed. § 47:22. *Accord* Restatement (Third) Of Restitution and Unjust Enrichment § 63 (AM. L. INST. 2011)

Here, the Parents' behavior was not found to be unreasonable, nor was it obstructive to the CSE's efforts to develop an appropriate IEP for A.M. The IHO, as the finder of fact, made no mention as to any "obstructionist" acts taken by the Parents. As explained below, the Parents were under no obligation to attend the CSE meeting, nor to provide the private school progress reports to the CSE—this burden lies with Defendants. The district was still capable of formulating an IEP for A.M. despite the Parents' non-attendance and the lack of progress reports. If the supposedly "uncooperative" actions of the Parents did obstruct the IEP development process, the DOE should have raised this affirmative defense under Prong I that they were unable to provide a FAPE but-for the Parents' actions. Instead, they conceded Prong I and now attempt to use the lack of parent participation as a last-ditch effort to justify that they owe a reduced amount to the Plaintiffs. In reality, the Defendants are unable to point to one instance where the Plaintiffs were obligated to do something that they did not do or did something that was so obstructive as to justify a reduction of around $50,000 in their award.

### A. The Parents' Attendance at the CSE Meeting was Not Required, Nor was Their Lack of Attendance Obstructive

Defendants argue in their Cross-Motion that the Parents acted unreasonably and obstructed the IEP development process by choosing not to attend the CSE meeting on June 4, 2018. [ECF No. 22, p. 12]. This argument is misguided; though the IEP process is intended to be a collaborative process between school districts and families, there is no explicit requirement for parents to participate in the CSE meetings. School districts are required to afford a disabled student's parents the opportunity to attend and participate in their child's IEP meetings, and are further required to take affirmative steps to ensure the parents are included in the child's CSE team. 20 U.S.C. §1415(b)(1); 34 C.F.R. §300.321(a)(1), §300.501(b)(1); 8 N.Y.C.R.R. §200.3(a)(1), §200.5(d).

However, while the DOE is required to give parents the opportunity to participate, there is no reciprocal requirement that the parents ***must*** utilize that opportunity. *See, E. Z.-L. ex rel. R.L.,*

763 F. Supp. 2d 584, 596 (S.D.N.Y. 2011) ("while a school district is required to ensure that parents can participate in formulating their child's general educational program, it is not required to involve them in its decision regarding the specific placement recommendation for the child"). Case law in this jurisdiction is devoid of any language that indicates parents are required to attend and participate in the CSE's IEP meeting, as long as they were given a meaningful opportunity to do so. *See M.M. ex rel. A.M. v. New York City Dep't of Educ. Region 9 (Dist.2)*, 583 F. Supp. 2d 498, 506 (S.D.N.Y. 2008) ("[S]chool evaluators may prepare reports and come with pre-formed opinions . . . as long as they are willing to listen to the parents and parents have the opportunity to make objections and suggestions."). The ability to attend their child's IEP meetings and contribute to the IEP development process is, therefore, a ***right*** given to parents, not a ***requirement***.

School districts are required to allow parents to be members of the IEP team, and the district must make every effort to schedule an IEP meeting at a mutually agreed-upon time and location. *E. Z.-L.*, 763 F. Supp. 2d at 596. The public agency "responsible for providing education to children with disabilities" is required to "take steps to ensure that one or both of the parents of a child with a disability are present at each IEP meeting or are afforded an opportunity to participate" including providing ample notice and "scheduling the meeting ***at a mutually agreed on time and place***." 34 C.F.R. §300.322(a) (emphasis added); *see Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1044 (9th Cir. 2013). The district bears the burden to show they took affirmative steps to try and secure the Parent's participation at the IEP meeting. See *Mr. "M" ex rel "K.M." v. Ridgefield Bd. of Educ.,* No. 3:05-CV-584 (RNC), 2007 WL 987483, at *6 (D. Conn. Mar. 30, 2007). Here, Plaintiffs specifically requested that the meeting take place at the child's then private school, iHope, and that a DOE physician be physically present at the meeting. [R 16]. Neither of these requests were accommodated by the CSE. Defendants indicate in their Cross-Motion that there were no further efforts that could have been taken by the CSE to secure the attendance of the Parents. But this argument is unconvincing at best, as they could have easily made the effort to

hold the meeting at the Parents' requested location or to include an in-person district physician. It is disingenuous for the DOE to assert that they made every possible effort to ensure the Parents' attendance at the meeting when they blatantly ignored two out of the three requests made by the Parents.

### B. Parents are Not Required to Provide Progress Reports

The backbone of the Defendants' argument to justify the reduction is seemingly the fact that the Parents did not provide the CSE with A.M.'s progress reports from iHope. To support this argument, Defendants cite to a case which quotes *M.H. v. New York City Dep't of Educ.,* 685 F.3d 217 (2d Cir. 2012), holding that whether parents cooperated with the CSE by providing private evaluations is relevant to the analysis of whether the equities favor reimbursement. [ECF No. 22, p. 11]. citing *Bd. of Educ. v. M.N.*, No. 16-CV-09448, 2017 U.S. Dist. LEXIS 169926, at *27 (S.D.N.Y. 2017) (quoting *M.H.*, 685 F. 3d at 254). However, in *M.H.*, the "private evaluations" refer to evaluations done by the child's "treating doctors and therapists" who were privately hired by the parents, not evaluations done by the child's school, which DOE coordinates with to perform its own evaluations (i.e. classroom observations)., *M.H.*, 685 F.3d at 236. Defendants assert that because the Parents contracted with iHope to provide their child with educational services, they should somehow have total control over the documents produced by the school regarding their child, but this argument misses the point. Plaintiffs are not suggesting that they have no control over these evaluations or the permissions regarding sharing the evaluations. Rather, t the Plaintiffs argue the responsibility to make sure that the school provides the progress reports in a timely manner, as the school is the one who possesses that documentation.

Defendants conveniently neglect to mention that the CSE also repeatedly contacted iHope requesting production of the progress reports, and not solely the Parents. The SRO held that "the June CSE did not have any response from the **student's nonpublic school** regarding the student's most recent progress reports although they had been requested on multiple occasions." [R 17

6

(emphasis added)]. If it was the Parents' responsibility to provide the progress reports in the first instance, and the CSE was relying solely on the Parents for such reports, they would have no reason to be repeatedly contacting iHope for the same. It is clear that the DOE knew to some degree that the Parents were not the ones ultimately responsible for providing the progress reports, but now are attempting to unfairly place the blame on the Parents to make it appear as if they purposely obstructed the IEP process for their child.

Defendants go even further to make the completely baseless claim that "it is reasonable to infer that the Plaintiffs had copies of the progress reports in their control prior to the CSE meeting." [ECF No. 22 p. 14]. The fact that the Plaintiffs told the CSE that they would provide the progress reports upon a new meeting being scheduled does not provide any evidence that the progress reports were already in their possession. The Plaintiffs were merely suggesting that when a new meeting was scheduled that accommodated their requests, they would attempt to obtain the reports from the school or have them provided to the CSE. It is a large stretch and an unreasonable inference for Defendants to assert that just because the Parents made such an offer, they already had the documents in their possession and were purposely withholding them from the CSE. Defendants also note that nothing in the record suggests that the Parents tried to obtain the progress reports from iHope, but again, they had no legal or contractual obligation to do so.

If the Parents' actions truly impeded the CSE's development of A.M.'s IEP, it is safe to say that the IHO would have at least mentioned such actions in his decsion when analyzing the balance of equities. Indeed, the IHO recognized that DOE failed to hold an annual review meeting at a time that was agreeable to Plaintiffs, held the meeting in their absence, and ignored Plaintiffs' written request that the DOE physician attend the IEP meeting. [R 27]. However, the IHO did not discuss *or even mention* any lack of parental participation. In fact, the IHO noted that the Parent "has also worked to facilitate the appropriate provision of myriad services for the Student." [R 37]. The fact that the IHO never even considered a lack of parent participation when considering the

equities only further undermines the Defendants' contention that the Parents' behavior warrants a reduction of their relief.

**POINT IV: THE PARENTS HAVE MET THEIR BURDEN AND ARE
ENTITLED TO RECEIVE DIRECT FUNDING**

In his opinion, the SRO improperly reversed the IHO's order directing the DOE to provide the Plaintiffs with reimbursement or direct payment to iBRAIN for A.M.'s tuition and transportation costs. The SRO also erroneously held that direct retroactive payment was a remedy contingent upon proof of the Parents' financial resources or lack thereof and that without such financial information, the only remedy available is tuition reimbursement upon proof of payment.

Defendants largely reiterate the (erroneous) equitable findings of the SRO, offering little to no support of their own. However, the case law that Defendants copied from the SRO opinion is unavailing. Defendants first cite a quote from *Mr. and Mrs. A v. New York City Dep't of Educ.,* where the court stated "the school district could be required, under [20 U.S.C.] § 1415, 'to pay the tuition directly' to the private school: 'once the Burlington prerequisites relative to a non-approved private school are met, and a parent shows that his or her financial circumstances eliminate the opportunity for unilateral placement in the non-approved school, the public school must pay the cost of private placement immediately.'" *Mr. & Mrs. A v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 426 (S.D.N.Y. 2011) (quoting *Connors v. Mills*, 34 F.Supp.2d 795, 805-06 (N.D.N.Y. 1998)).  Both Defendants and the SRO misuse this quote—the court in *Mr. & Mrs. A* was referencing *prospective* direct payment to a private school, rather than **retrospective** direct payment.

Although Defendants cherry-pick those quotes of *Mr. and Mrs. A.* that support their proposition that parents must show an inability to pay, Defendants make a fundamental error—by using the quotes piecemeal, the larger picture of *Mr. and Mrs. A* is lost to the narrative that a parent must show an inability to pay the private school tuition in order to be granted direct payment as a

8

remedy. The clear misinterpretation of the law continues in Defendants' next cite from *Mr. and Mrs. A.* specifically addressing retroactive direct payment, where the court holds: "Where…parents lack the financial resources to 'front' the costs of the private school tuition, and in the rare instance where a private school is willing to enroll the student and take the risk that the parents will not be able to pay tuition costs—or will take years to do so—parents who satisfy the Burlington factors have a right to retroactive direct tuition payment relief." *Id.* at 428. Nowhere in *Mr. and Mrs. A.* or any other case in this jurisdiction does the court say that ***only if*** the parents lack the financial resources to front the cost may the court grant such relief. Defendants here adopt the SRO's misguided findings and attempt to create a fourth prong in the *Burlington/Carter* analysis, which does not exist, and thus this argument should be given no weight.

Under the IDEA, courts exercise broad remedial authority to "grant such relief as the court determines is appropriate." 20 U.S.C. §1415(i)(2)(C)(iii). This language has been interpreted to encompass a large variety of different remedies and forms of relief that courts may grant to parents whose children have been denied a FAPE by local school districts. *Frank G.,* 459 F.3d 356, 371–72 (2d Cir. 2006), citing 20 U.S.C. §1415(i)(2)(C)(iii). As Plaintiffs discuss extensively in their initial moving papers, the legislative history of IDEA is devoid of anything that suggests Congress sought to limit or constrain the power of a district court judge to award full funding for a private placement when a FAPE has been denied and the parents' choice of unilateral placement has been deemed appropriate. In *Burlington*, the Supreme Court held:

> A final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed. In the meantime, the parents who disagree with the proposed IEP are faced with a choice: go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement. If they choose the latter course, which conscientious parents who have adequate means and who are reasonably confident of their assessment normally would, ***it would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials***. If that were the case, the child's

right to a free appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete.

*School Committee of Town of Burlington, Mass.,* 471 U.S. at 369–70 (emphasis added).

The IDEA was enacted with the purpose of giving disabled children access to an appropriate and **free** education, and courts must take caution not to dispose of either of those objectives. *Frank G.*, 459 F.3d at 372 (internal quotations omitted) quoting *School Committee of Town of Burlington, Mass.*, 471 U.S. at 372; *Still v. DeBuono*, 101 F.3d 888, 893 (2d Cir. 1996). Forcing the Parents to either prove their inability to pay or front the significant cost of tuition for what could be years until receiving a judgment for reimbursement can hardly be considered "free."

In *Connors v. Mills*, the Northern District notes that families without enough financial means would be "hard pressed to pay for private education in what will almost invariably be a significant time lapse between a ruling in their favor and the ultimate close of litigation." 34 F. Supp. 2d 795, 805 (N.D.N.Y 1998). If parents who barely have the means to front the costs of tuition until a judgment is issued, those families could end up not being able to make ends meet for years until they finally receive an order of reimbursement. This clearly should not be the case, as no family deserves to have to live in such a way, especially the family of a disabled child. Thus, requiring proof of inability to pay in order to issue an award for direct retrospective payment would render the rights of parents with limited financial means, in the words of the *Burlington* court, "less than complete."

In *T.M. v. Cornwall Cent. Sch. Dist.,*[2] the Second Circuit found that ***even though*** T.M. was offered a FAPE for the school year in question, the parents were not foreclosed from reimbursement for the education and related services offered to T.M. at the private placement. *Id.* Although T.M. involved a case where a summer program was not offered in accordance with the

---

[2] *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145 (2d Cir. 2014).

T.M.'s IEP, the Second Circuit ultimately found that notwithstanding that the student was offered a FAPE, the matter was remanded to the district court for further adjudication under the *Burlington/Carter* test. Thus, **even if** Defendants had prevailed on Prong I, Plaintiffs would still be entitled to funding for A.M.'s education during the 2018-2019 SY.

Creating an "ability to pay" requirement creates a dangerous slippery slope, as no distinct line has been drawn indicating what level of financial resources constitutes an "ability to pay." In *Connors v. Mills*, where the Court found that financial inability to pay is to be considered for *prospective* direct payment, the Court mentions in a footnote that "the specifics of calculation are not given here" noting that schools should draw from financial aid evaluations to fashion an appropriate calculus of financial means. *Connors*, 34 F. Supp. 2d at 805. Courts would then have alarmingly broad discretion in determining who has financial means and who does not, and such an ambiguous standard can be extremely problematic. For example, if Parents would have to sell their car or other possessions in order to front the tuition costs for their child's unilateral placement, are they required to do so? How about taking out a second mortgage against their family's home? The requirement of proving inability to pay in order to receive direct payment is likely to cause significant confusion and hardship on many families, and thus should not be implemented here.

## CONCLUSION

In light of the preceding, Plaintiffs respectfully request that this Court GRANT Plaintiffs' Motion for Summary Judgment, and that this Court issue an Order that: (1) Defendants denied A.M. a FAPE for the 2018-2019 SY; (2) that the Parent's unilateral placement at the private school was appropriate; and (3) that the equities favor full tuition reimbursement in the form of direct retroactive payment to iBRAIN for A.M.'s 2018-2019 SY, including related services and transportation costs.

Respectfully Submitted,

\_\_/s/_____
Ashleigh C. Rousseau, Esq. (5801923)
*Attorneys for the Plaintiffs*
Brain Injury Rights Group, Ltd.
300 E. 95th Street, #130
New York, New York 10128
ashleigh@pabilaw.org

cc:
     Aaron Weiner, Esq.
     *Attorneys for Defendants*
     New York City Law Department
     100 Church Street
     New York, New York 10128
     *Via ECF*