Index No.  22 CV 1685 (LGS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDITH MAYSONET and ANTHONY McFARLANE as Parents and Natural Guardian of A.M., and JUDITH MAYSONET and ANTHONY McFARLANE, Individually,

                              Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                              Defendant.

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

*HON. SYLVIA O. HINDS-RADIX*
Corporation Counsel of the City of New York
Attorney for Defendant
100 Church Street, Room 2-192
New York, N.Y.  10007

Of Counsel: Aaron Wiener
Tel: (212) 356-4362
City File No.: 2022-014453

# **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................................ii

PRELIMINARY STATEMENT .........................................................................................................1

ARGUMENT..........................................................................................................................................2

      POINT I
      DENIAL OF A FREE APPROPRIATE PUBLIC EDUCATION DOES NOT BAR REDUCTION OF A TUITION AWARD BASED ON EQUITABLE CONSIDERATIONS. ..................................................................................................................2

      POINT II
      THE SRO CORRECTLY FOUND THAT PLAINTIFFS' OBSTRUCTIVE AND UNREASONABLE ACTIONS WARRANTED A REDUCTION OF THEIR AWARD. ..........................................................................................................................................6

           A. Plaintiffs' Actions Prior to the June 4, 2018 Meeting, and Their Unexplained Failure to Attend Were Unreasonable................................................................7

           B. Plaintiffs' Failure to Provide the iHope Progress Reports was Uncooperative, Obstructive, and Unreasonable ...........................................................................9

      POINT III
      THE SRO CORRECTLY FOUND PLAINTIFFS FAILED TO MEET THEIR BURDEN, AND ARE NOT ENTITLED TO DIRECT FUNDING....................................................10

CONCLUSION.................................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bd. of Educ. v. M.N.*
    2017 U.S. Dist. LEXIS 169926 (S.D.N.Y. Oct. 13, 2017) .................................................9

*Connors v. Mills*
    34 F. Supp. 2d 795 (N.D.N.Y. 1998) ............................................................................. 12

*D.C. v. Klein Indep. Sch. Dist.*
    860 Fed. Appx. 894 (5th Cir. 2021) .................................................................................5

*Donohue v. New York City Dep't of Educ.*
    2021 U.S. Dist. LEXIS 189873 (S.D.N.Y. Sept. 30, 2021) ............................................4, 6

*E.M. v. New York City Dep't of Educ.*
    758 F.3d 442 (2d Cir. 2014) ........................................................................................... 11

*G.B. v. New York City Dep't of Educ.*
    145 F. Supp. 3d 230 (S.D.N.Y. 2015) ..............................................................................7

*IMG Mem'l Fund 1, LLC v. First Landing Fund, LLC*
    2022 U.S. Dist. LEXIS 48701 (S.D.N.Y. Mar. 18, 2022) ..................................................2

*Mr. & Mrs. A v. New York City Dep't of Educ.*
    769 F. Supp. 2d 403 (S.D.N.Y. 2011) ............................................................................ 11

*N.R. v. N.Y.C. Dep't of Educ.*
    2009 U.S. Dist. LEXIS 27273 (S.D.N.Y. Mar. 31, 2009) .............................................3, 4

*Neske v. Porter*
    2022 U.S. Dist. LEXIS 143952 (S.D.N.Y. Aug. 11, 2022) ...................................4, 5, 6, 9

*Pettaway v. Nat'l Recovery Sols., LLC*
    955 F.3d 299 (2d Cir. 2020) .............................................................................................2

**Statutes**

20 U.S.C. § 1400 ......................................................................................................................1

20 U.S.C. § 1412(a)(10)(C)(iii)(III) .....................................................................................2, 7

**<u>Regulations</u>**

34 C.F.R. § 300.322 ...................................................................................................................8, 9

8 NYCRR § 200.5(c)(2)(iv) ............................................................................................................8

8 NYCRR § 200.5(d)(7) .................................................................................................................9

## PRELIMINARY STATEMENT

Defendant New York City Department of Education respectfully submits this reply memorandum in further support of its cross-motion for summary judgment dated July 16, 2022 (ECF No. 22), and in response to Plaintiffs' memorandum in opposition to the Department's cross-motion and reply in support of their motion ("Pltf.s' Reply") (ECF No. 27). In this action, brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, Plaintiffs seek partial reversal of an administrative decision issued by the New York State Education Department's Office of State Review (the "SRO"), which found Plaintiffs obstructed the Department's Committee on Special Education ("CSE") in formulating Plaintiff A.M.'s individualized education plan, warranting a 20 percent reduction of the of the tuition award associated with her private school education for the 2018-2019 school year. Plaintiffs also seek reversal of the decision that the Department was responsible for funding such an award through reimbursement to Plaintiffs upon proof of having made payments to the private school.

Plaintiffs argue for the first time that because the SRO found the Department failed to offer A.M. a free appropriate public education ("FAPE"), it is somehow precluded from seeking to uphold the SRO's reduction based on equitable considerations. Not only should this argument not be considered, but it has no support in the law, as it wholly disregards the third prong of the relevant test. Plaintiffs also wrongly argue they did not obstruct the CSE or otherwise act unreasonably, despite the SRO's thorough and well-reasoned finding to the contrary. Finally, Plaintiffs argue they are entitled to retrospective direct funding, despite the SRO's finding that they bore the burden to demonstrate a financial inability to pay the tuition costs of the private school, a showing they failed to make. None of Plaintiff's arguments have merit, and because the SRO's decision is thorough and well-reasoned, it is entitled to deference and should be upheld.

## ARGUMENT

### POINT I

### DENIAL OF A FREE APPROPRIATE PUBLIC EDUCATION DOES NOT BAR REDUCTION OF A TUITION AWARD BASED ON EQUITABLE CONSIDERATIONS.

The first and second prongs of the *Burlington/Carter* framework are not in dispute in this matter, as the Department does not challenge the SRO's finding that it denied A.M. a FAPE for the 2018-2019 school year and that Plaintiffs' unilaterally chosen placement at the International Institute for the Brain ("iBrain") was an appropriate placement. As to the remaining prong—whether the equities weigh in favor of tuition funding—Plaintiffs argue in part that because the Department conceded it did not offer A.M. a FAPE for the 2018-2019 school year, it is precluded from arguing that the SRO correctly found that equitable considerations warrant a reduction in the tuition award. Pltf.s' Reply, at p. 3. Plaintiffs' argument is not legally sound, and should not be considered.

As a threshold matter, because Plaintiffs did not support this argument in their initial moving papers (ECF No. 19), the Court may, and should, elect not to consider it.[1] *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 305 n.2 (2d Cir. 2020) ("We need not address this argument because it was raised on appeal for the first time in . . . reply and is therefore waved [sic]."); *IMG Mem'l Fund 1, LLC v. First Landing Fund, LLC*, No. 21-CV-3263, 2022 U.S. Dist. LEXIS 48701, at *18-19 (S.D.N.Y. Mar. 18, 2022) ("the Court declines to consider the arguments raised for the first time in the reply.") (Schofield, J.). If the Court considers Plaintiffs' argument,

---

[1] Though Plaintiffs stated that "a school district is precluded from asserting that the equities weigh in its favor when it concedes it failed to provide the student with a FAPE," this statement was made under the heading "IDEA's Legal Framework" and Plaintiffs did not address the issue within their "Argument" section or otherwise support this statement. ECF No. 19, at p. 7.

2

the Court should reject it, as there is no authority to support the contention that the Department's failure to provide a FAPE bars reduction of an award based on equitable considerations.

In support of their proposition that the third prong of the *Burlington/Carter* framework should be disregarded here, Plaintiffs rely on *N.R.*, a case that does not substantiate their view, and is distinguishable from the instant matter. *See N.R. v. N.Y.C. Dep't of Educ.*, No. 07-cv-9648, 2009 U.S. Dist. LEXIS 27273 (S.D.N.Y. Mar. 31, 2009). In *N.R.*, the plaintiff filed a due process complaint alleging the denial of a FAPE, and sought funding for the unilateral placement of her child at a private school. *Id*. At a hearing before an Independent Hearing Officer ("IHO"), the Department conceded it failed to provide the student with a FAPE, however the IHO found the plaintiff's unilateral placement was not appropriate, and denied funding on that basis. *Id*. at *10-11. On appeal, the SRO reversed the IHO's decision regarding the appropriateness of the unilateral placement, but upheld the decision to deny funding based on the plaintiff's failure to provide the Department with adequate notice of her intention to place her child at a private school during the process of developing the child's Individualized Education Plan ("IEP").

On appeal of the SRO's decision to federal court, the District Court considered the equities but found they did not favor a denial of funding. *N.R.*, 2009 U.S. Dist. LEXIS 27273, at *20. There, the Court held the underlying administrative record reflected the parent had acted reasonably during the IEP process, "cooperated with the Department throughout the placement process," "attended every scheduled CSE meeting, provided the CSE with every document that it requested, [and] visited [the] Department's belatedly-provided school placement." *Id*. On this basis, the Court found that a reduction was not warranted because the plaintiff cooperated with the CSE. *Id*. at *20-21. Such cooperation with the CSE however, is lacking in the instant matter.

3

In contrast to *N.R.*, the record before this Court reflects that Plaintiffs obstructed the IEP process and acted unreasonably by making it difficult for the CSE to work with them in preparing A.M.'s IEP for the 2018-2019 school year. Plaintiffs did not attend the meeting of the CSE, and did not provide the documentation necessary to prepare an appropriate IEP. *See* Revised Joint Statement of Undisputed Fact (ECF No. 26) ("Joint Statement"), at ¶ 23 ("the parent's actions impeded the process leading up to the June 2018 CSE meeting, and that along with the failure to provide private school progress reports and the refusal to attend the June CSE meeting itself after it was re-scheduled to meet the parent's scheduling preferences, was unreasonable."). Thus, the plaintiff in *N.R.*, and Plaintiffs here are not similarly situated with respect to their conduct toward the CSE.

Moreover, nothing in the *N.R.* decision supports the proposition that the denial of a FAPE precludes a reduction based on equitable considerations. Indeed, the Court in *N.R.* specifically addressed the equitable considerations despite the lack of any challenge to the SRO's findings regarding the first two prongs of the *Burlington/Carter* test. Since issuance of the Court's decision in *N.R.*, courts have expressly rejected the same argument Plaintiffs offer here. *See, e.g.*, *Neske v. Porter*, No. 21-cv-10363, 2022 U.S. Dist. LEXIS 143952, at *14 (S.D.N.Y. Aug. 11, 2022) ("Plaintiffs' argument that they are entitled to reimbursement because Defendants concede [the student] was not provided a FAPE is legally wrong."); *Donohue v. New York City Dep't of Educ.*, No. 20-cv-1942, 2021 U.S. Dist. LEXIS 189873, at *29-30 (S.D.N.Y. Sept. 30, 2021) (holding "not only is *N.R.* not binding on this Court, but even if it were, the record does not reflect that Parent had no role in impeding the IEP process.").[2]

---

[2] Like the student in the instant case, the students in both *Neske* and *Donohue* attended iBrain, and were represented by Plaintiffs' counsel's law firm here.

4

Plaintiffs' citation to the <u>dissenting</u> opinion in *D.C. v. Klein Indep. Sch. Dist.*, an unpublished decision of the Fifth Circuit, for its statement that "a party seeking equitable relief must not have 'unclean hands'" is equally unavailing. 860 Fed. Appx. 894, 911 n.10 (5th Cir. 2021); Pltf.s' Reply, at p. 3. The section of the *D.C.* decision from which Plaintiffs extracted their quotation discussed "unclean hands" in the context of the plaintiff having "hijacked the [IEP] proceedings" and pressuring the school district into providing the wrong compensatory education services to the student, and thereafter seeking to recover for the district providing the wrong services. *Id.*, at 911. The dissenting opinion in *D.C.* did not discuss in any way whether a school district's denial of a FAPE constitutes unclean hands for purposes of determining a reduction based on equitable considerations. *See generally*, *id.* The majority's decision likewise did not discuss such a proposition, and indeed did not discuss equitable considerations or "unclean hands" at all, as it found the plaintiff was no longer seeking equitable relief, thereby rendering the plaintiff's claim moot. *See id.*, at 907-09.

Rejecting Plaintiffs' argument is also appropriate because accepting it would render the third prong of the *Burlington/Carter* framework entirely superfluous. Under Plaintiffs' view, if a FAPE is denied, an equities consideration would be barred. Conversely, if a FAPE is provided, any funding award would be precluded, and there would be no need to engage in an equities consideration. This is not the outcome the Supreme Court envisioned in formulating the *Burlington/Carter* test. *See Neske*, 2022 U.S. Dist. LEXIS 143952, at *14 ("Plaintiffs' view of the *Burlington/Carter* test, thus leaves no scenario in which the third prong has any effect, which is clearly not the law.").

The SRO properly engaged in an equities consideration after finding in favor of the Plaintiffs on prongs I and II of the *Burlington/Carter* test. Accordingly, the SRO properly

5

considered Plaintiffs' unreasonable and obstructive behavior. As discussed below, the SRO's decision to reduce Plaintiffs' award based on such considerations was well-justified and should be upheld.

## POINT II

### THE SRO CORRECTLY FOUND THAT PLAINTIFFS' OBSTRUCTIVE AND UNREASONABLE ACTIONS WARRANTED A REDUCTION OF THEIR AWARD.

Plaintiffs erroneously argue that their failure to attend the June 4, 2018 CSE meeting, as well as their actions toward the CSE during the events leading up to the meeting, cannot be considered obstructive or unreasonable. Pltf.s' Reply, at p. 4. Here, the SRO found Plaintiffs failed to provide relevant progress reports to the CSE, and repeatedly requested to reschedule the CSE meeting they ultimately did not attend, warranting a reduction of their award by 20 percent. *See* Joint Statement, at ¶ 41. Against the weight of the SRO's thorough and well-reasoned decision, Plaintiffs make two principle arguments: first, their attendance at the IEP meeting was not required, and could not have been obstructive; second, they were not required to provide progress reports to the CSE nor were they required to even ask the private school to provide them.  Taken together, Plaintiffs' argument appears to be that while the CSE was required to accommodate their every request, nothing was required of them, not even a token degree of cooperation. Not surprisingly, the law does not support this argument.

The IDEA envisions a process by which school districts and families cooperate to determine appropriate educational programs and placements for students with disabilities. *See Donohue*, 2021 U.S. Dist. LEXIS 189873, at *32. Indeed, "Congress specifically amended the IDEA to place some responsibility on parents by instructing courts to reduce or deny tuition funding if parents behave unreasonably." *Neske*, 2022 U.S. Dist. LEXIS 143952, at *14; *see* 20

U.S.C. § 1412(a)(10)(C)(iii)(III). Therefore, parents' cooperation with the CSE is expected under the IDEA, and cooperation or lack thereof may be considered when determining whether the equities warrant a reduction or denial of the tuition award. *See G.B. v. New York City Dep't of Educ.*, 145 F. Supp. 3d 230, 257 (S.D.N.Y. 2015) ("Courts have considered a variety of factors at [prong III] including whether the parents cooperated with the CSE (e.g., providing reports, attending the meeting, participating in the meeting) . . . [and] whether the parents or the DOE unreasonably delayed anything . . . ." (parenthesis in original) (internal citations omitted)). As Plaintiffs themselves admit, "the IEP process is intended to be a collaborative process between school districts and families." Pltf.'s Reply, at p. 4. Here, Plaintiffs did not cooperate with the CSE, and the SRO properly reduced their award.

### A. Plaintiffs' Actions Prior to the June 4, 2018 Meeting, and Their Unexplained Failure to Attend Were Unreasonable.

The SRO correctly found that in light of their multiple requests regarding the scheduling and format of the June 4, 2018 CSE meeting which they did not attend, Plaintiffs acted unreasonably. Plaintiffs argue that because there is no explicit requirement that they attend the meeting of the CSE, their actions cannot be viewed as unreasonable. Pltf.'s Reply, at p. 4. Plaintiffs seem to ignore the fact that regardless of whether they were required to attend, the IDEA requires that they act reasonably. *See* 20 U.S.C. § 1412(a)(10)(C)(iii)(III). In jumping straight to the issue of whether they were required to attend the meeting, Plaintiffs gloss over the fact that the SRO viewed not just their absence at the meeting as unreasonable, but also the fact the Department accommodated Plaintiffs' multiple requests to reschedule and hold the meeting on a particular day of the week. *See* Joint Statement, at ¶ 38 ("the refusal to attend the June CSE meeting itself after it was re-scheduled to meet the parent's scheduling preferences, was unreasonable.").

7

Plaintiffs assert the Department failed to make reasonable efforts to secure their attendance at the CSE meeting by not having a district physician attend in person and by not setting the meeting to take place at A.M.'s private school, the International Academy of Hope ("iHope"). Pltf.'s Reply, at pp. 5-6. In the Plaintiffs' words, the Department "blatantly ignored two out of the three requests made by the Parents." *Id.*, at p. 6. This is simply untrue. The Department advised Plaintiffs it would make a physician available by phone, and that it could not hold the meeting at iHope without an explanation as to the reason for Plaintiffs' requested location. *See* Joint Statement, at ¶ 18. Plaintiffs did not explain the reason for either request to the Department. Even now, Plaintiffs offer no reason for these requests.

Rather than provide an explanation, Plaintiffs argue the Department could have "easily made the effort" to simply acquiesce to their demands. Pltf.'s Reply, at p. 5. Plaintiffs' argument appears to be based on 34 C.F.R. § 300.322, which requires the Department to take steps to ensure one or both parents attend or have the opportunity to participate in the CSE meeting. The regulation does not state the Department must accommodate every request about the format of the CSE meeting, and indeed nothing in the IHO or SRO decisions found that the Department failed any of its obligations in this respect. Thus, Plaintiffs' argument that the Department was required to "make every effort" boils down to an assertion that if the Department can theoretically accommodate a request—regardless of how taxing it may be—it is obligated to do so. Pltf.'s Reply, at p. 5. This is not the law.

As to their request for in-person attendance of a physician, Plaintiffs were allowed to request that a physician attend the meeting under 8 NYCRR § 200.5(c)(2)(iv). This regulation, however, does not require the physician to attend the meeting in-person. Contrary to Plaintiffs' assertion, the regulation "explicitly provides that members may attend the CSE meeting via

8

teleconference or video conference technology." *Neske*, 2022 U.S. Dist. LEXIS 143952, at *11 (citing 8 NYCRR § 200.5(d)(7)). Accordingly, the Department's offer to have a physician attend the CSE meeting by telephone comports with the applicable regulation, and provides no legitimate basis for Plaintiffs to argue the Department failed to make sufficient efforts to secure their attendance.

Likewise, there is no authority to support Plaintiffs' assertion that the Department was required to hold the CSE meeting at iHope. This is because 34 C.F.R. §300.322 provides that the meeting should be scheduled at a mutually agreed on place, not that the Department must agree to any request for any location made by a parent.

Essentially, Plaintiffs argue that while the Department should have done more to accommodate their requests regarding the meeting, Plaintiffs are shielded from being viewed as unreasonable because they were not required to attend. Plaintiffs are not correct. Accordingly, the SRO correctly found the Plaintiffs acted unreasonably with respect to scheduling and setting the CSE meeting they failed to attend without explanation.

### B. Plaintiffs' Failure to Provide the iHope Progress Reports was Uncooperative, Obstructive, and Unreasonable.

The SRO also correctly found Plaintiffs were obstructive and unreasonable in failing to provide the CSE with A.M.'s recent progress reports from iHope. Consideration of a plaintiff's failure to provide private school progress reports to the CSE is appropriate when determining whether the equities favor reduction in funding. *Bd. of Educ. v. M.N.*, No. 16-CV-09448, 2017 U.S. Dist. LEXIS 169926, at *27 (S.D.N.Y. Oct. 13, 2017). Here, Plaintiffs neither provided the reports to the CSE, nor did they take any steps to even attempt to do so.

Plaintiffs contend that they had no responsibility to make sure iHope provided the reports to the CSE. In doing so, Plaintiffs elevate technical assertions regarding who was literally

9

tasked with transmitting the progress reports above the practical reality that had Plaintiffs instructed iHope to provide the reports, iHope would have been obligated to do so. In making such a technical argument, however, Plaintiffs' position becomes internally contradictory. *Compare* Pltf.'s Reply, at p. 6 ("Plaintiffs are not suggesting that they have no control over these evaluations or the permissions regarding sharing the evaluations.") *with* p. 7 ("Defendants . . . make the completely baseless claim that 'it is reasonable to infer that the Plaintiffs had copies of the progress reports in their control' . . . .").

Despite Plaintiffs' creative argument, by their own admission they had at least some degree of control over the progress reports. In the spirit of cooperation with the CSE, they should have provided them, or instructed iHope to do so. Indeed, a simple email or phone call to the school likely would have accomplished the task. That Plaintiffs apparently made no such efforts is revealing of their obstructive and uncooperative behavior. Requests for progress reports by the CSE to a private school will always be ineffective if parents do not authorize their release. Here, the record is devoid of any information demonstrating Plaintiffs' authorization or instruction to iHope. Accordingly, the SRO's decision to reduce Plaintiffs' award should be upheld.

## POINT III

### THE SRO CORRECTLY FOUND PLAINTIFFS FAILED TO MEET THEIR BURDEN, AND ARE NOT ENTITLED TO DIRECT FUNDING.

The SRO correctly found that to demonstrate entitlement to direct retrospective funding to iBrain, Plaintiffs bore the burden to demonstrate a financial inability to pay the costs of tuition. Because the SRO found that Plaintiffs failed to offer any evidence as to their inability to front the costs of tuition, the SRO correctly found Plaintiffs did not meet their burden. Joint Statement, at ¶ 40. Rather than dispute the SRO's finding that they failed to meet their burden, and

therefore were entitled only to reimbursement upon proof of payment, Plaintiffs argue that they have no such burden. Plaintiffs' position is contrary to law.

As argued in the Department's cross-motion Courts in the Second Circuit have made clear that although the IDEA authorizes retrospective direct funding to a private school, such a remedy is appropriate only where a plaintiff has demonstrated financial inability to make payments. Memorandum of Law In Support of Cross-Motion, at p. 18 (ECF No. 22). In opposing this principle, Plaintiffs incorrectly assert the case of *Mr. & Mrs. A v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403 (S.D.N.Y. 2011) drew a distinction between retrospective and prospective funding in terms of the burden to show inability to make payments. *See* Plaintiffs' Reply, at p. 8. Nothing in the decision held that payments were to be made by direct funding as opposed to reimbursement depending on whether such payments were intended to be retrospective or prospective. Instead, in ruling that direct funding was appropriate, the Court in *Mr. & Mrs. A.* was careful to highlight the fact that the parents lacked the financial resources to make payments to the unilateral placement. *Id*. The Court found that retrospective direct tuition payment was appropriate where a private school enrolls the child of parents who "lack the financial resources to front the costs of private school tuition," and thus "take the risk that the parents will not be able to pay tuition costs—or will take years to do so . . . ." *Id*. at 428. Here, Plaintiffs have not shown they lack financial resources.

Plaintiffs also ignore the holding in *E.M. v. New York City Dep't of Educ.* that the IDEA contemplates direct payment to a private school in "appropriate circumstances." 758 F.3d 442, 453 (2d Cir. 2014). There, the Second Circuit held that "<u>where the equities call for it</u>, direct payment fits comfortably within the *Burlington-Carter* framework . . . ." *Id*. (emphasis added). Such appropriate circumstances are those in which a plaintiff demonstrates an inability to make

11

tuition payments. Here, Plaintiffs did not satisfy their burden with respect to their financial ability to make tuition payments before the IHO, SRO, and this Court, and therefore are not entitled to the remedy direct funding to iBrain.

Lastly, Plaintiffs argue that the determination of what constitutes a financial ability to pay would provide administrative bodies and courts with impermissibly broad discretion. This is not the case, especially because, as Plaintiffs concede, the court in *Connors* held that guidance for such a determination could be drawn from financial aid evaluations. Pltf.s' Reply, at p. 11 (citing *Connors v. Mills*, 34 F. Supp. 2d 795, 805 (N.D.N.Y. 1998)). Rather than acknowledge that this determination is within courts' abilities, Plaintiffs continue to present alarmist hypotheticals in an effort to demonstrate how ambiguous the standard allegedly would be. Among the scenarios offered by Plaintiffs are situations in which a family would have to sell their car or other possessions, take out a second mortgage on their home, work a second job, or forego health insurance in order to make tuition payments. Pltf.s' Reply, at p. 11; Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, at p. 27 (ECF No. 19). These examples are nothing more than a distraction from the actual issue before this Court, because any reasonable jurist would find that a family forced to choose between health insurance (or any of the other options Plaintiffs offer, barring exceptional circumstances) and tuition payments is not financially able to front the costs of tuition.

Regardless of the appropriate calculus to determine a family's financial ability to make tuition payments, there is no ambiguity as to whether Plaintiffs made a sufficient showing, because they made no showing whatsoever. Accordingly, the SRO's decision that Plaintiffs are entitled to reimbursement only upon proof of payments made should be upheld.

## **CONCLUSION**

For the foregoing reasons, the Department respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment, grant Defendant's cross-motion, dismiss the Complaint in its entirety, and grant Defendant such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         August 24, 2022

                                              **HON. SYLVIA O. HINDS-RADIX**
                                              Corporation Counsel of the
                                                City of New York
                                              Attorney for Defendant
                                              100 Church Street
                                              New York, NY 10007
                                              (212) 356-4362
                                              awiener@law.nyc.gov

By:   /s/ Aaron Wiener
      Aaron Wiener
      Assistant Corporation Counsel