```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
JUDITH MAYSONET, et al.,                                      :
                                      Plaintiffs,             :   22 Civ. 1685 (LGS)
                                                              :
                 -against-                                    :   **OPINION AND**
                                                              :   **ORDER**
NEW YORK CITY DEPARTMENT OF                                   :
EDUCATION,                                                    :
                                      Defendant.              :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Judith Maysonet and Anthony McFarlane bring this action on behalf of their minor daughter A.M., who is disabled, pursuant to the Individuals with Disabilities Education Act (the "IDEA"). Plaintiffs seek review of a decision issued after administrative proceedings regarding A.M.'s educational placement at the International Institute for the Brain ("IBrain") for the 2018-2019 school year. Plaintiffs challenge a reduction in the amount of tuition and transportation costs that Defendant New York City Department of Education (the "DOE") is responsible for reimbursing and a finding that Plaintiffs were entitled to reimbursement, rather than direct funding, of those amounts. The parties cross-move for summary judgment. For the reasons given below, the parties' motions are each granted in part and denied in part.

**I.     BACKGROUND**

   **A.     The IDEA**

The IDEA mandates that states receiving federal special education funding provide disabled children with a free appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A); *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 155 (2d Cir. 2021). "The IDEA also requires that school districts create an individualized education program ('IEP') for each qualifying child." *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 133 (2d Cir. 2019).

An IEP is a "written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.* (internal quotation marks omitted).  If a parent believes that the DOE has failed to provide a FAPE to his or her child, the parent "may enroll the child in a private school at their own financial risk and seek retroactive reimbursement from the school district for the cost of the private school." *Id*.

A parent may challenge an IEP and seek reimbursement by filing a due process complaint, which initiates administrative proceedings, beginning with a hearing before an Impartial Hearing Officer ("IHO").  20 U.S.C. § 1415(f)(1)(A); *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015).  The inquiry at the IHO hearing is governed by the three-part *Burlington/Carter* test, requiring a parent to prove: "(1) the school district's proposed placement violated the IDEA by, for example, denying a FAPE to the student because the IEP was inadequate; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526-27 (2d Cir. 2020) (internal quotation marks omitted) (derived from *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985), and *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993)).  An IHO's decision may be appealed to a State Review Officer ("SRO"), who conducts an independent review of the record and applies the same *Burlington/Carter* test.  *See W.A.*, 927 F.3d at 133, 146.  Following a decision by an SRO, "[t]he IDEA permits a dissatisfied party to challenge an SRO's decision in state or federal court." *C.S.*, 990 F.3d at 164 (citing 20 U.S.C. § 1415(i)(2)(A)).

B.     **Factual Background**

The facts below are drawn from the parties' Revised Joint Statement of Undisputed Facts, the administrative record and other submissions on these motions. On the respective cross-motions, all reasonable inferences are drawn in favor of the non-moving party. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

Plaintiffs are the parents and guardians of A.M.,[1] a minor who was eight years old at the start of the 2018-2019 school year. A.M. has Acquired Brain Injury, a disability that affects her mobility and her ability to communicate. In the 2017-2018 school year, A.M. attended the International Academy of Hope ("IHope"), a private educational program that specializes in children with brain injuries. At a hearing in June 2018, an IHO found that the DOE did not provide a FAPE under the IDEA and IHope was not an appropriate unilateral placement. After Plaintiffs appealed a portion of the IHO's decision, the parties settled the matter with Defendant agreeing to fund A.M.'s placement at IHope.

On February 14, 2018, the Committee on Special Education ("CSE"), part of DOE, sent a notice to Plaintiffs regarding a meeting to develop A.M.'s IEP for the 2018-2019 school year. CSE rescheduled this meeting twice, first at the request of IHope and next at the request of Plaintiffs. On April 19, 2018, Plaintiffs wrote a letter to CSE requesting that the meeting be held at IHope on a Monday, with IHope staff and a DOE physician present, and stating that they would provide CSE with relevant materials, including A.M.'s progress reports. CSE responded that the meeting would be scheduled for a Monday, with a DOE physician attending via telephone, but the meeting would not be held at IHope, though IHope staff would be welcome to

---

[1] A.M. is referred to by her initials to protect her privacy. *See* Fed. R. Civ. P. 5.2(a)(3).

3

participate.  The meeting was rescheduled for June 4, 2018, a Monday, and a DOE employee confirmed with Plaintiffs one month beforehand that Plaintiffs had received notice.  Three CSE members subsequently contacted Plaintiffs to confirm the meeting date and that Plaintiffs would bring A.M.'s progress reports.  Plaintiffs and staff at IHope did not attend the June 4, 2018, meeting.  The CSE members who did attend developed an IEP for A.M. at the meeting.  Neither IHope nor Plaintiffs provided progress reports to help develop the IEP.

A.M.'s 2018-2019 IEP recommended a larger class size, no one-on-one paraprofessional help for A.M. and sessions of related services of shorter duration.  Plaintiffs filed an administrative challenge to the 2018-2019 IEP and gave DOE notice they intended unilaterally to place A.M. at IBrain for the 2018-2019 school year.  A.M. attended IBrain that school year. After a hearing, during which the DOE conceded that it had failed to offer A.M. a FAPE for the 2018-2019 school year, an IHO found that IBrain was an appropriate unilateral placement.  The IHO ordered DOE to provide reimbursement or direct payment to IBrain for the majority of the 2018-2019 school year, reducing the award to account for a period of time at the beginning of the school year when IBrain offered only partial support services, as called for in the reformulated IEP.  Plaintiffs requested review from an SRO.

The SRO issued his decision on October 28, 2021, finding that DOE had denied A.M. a FAPE for the 2018-2019 school year and that IBrain was an appropriate placement.  The SRO disagreed with the decision to reduce reimbursement due to incomplete services at IBrain, but reduced the reimbursement by 20% due to Plaintiffs' non-cooperation with the June 2018 CSE meeting.  Specifically, the SRO found it unreasonable that Plaintiffs had failed to provide progress reports and attend a meeting scheduled to accommodate them.  He further found, as a matter of law, that Plaintiffs bore the burden of production and persuasion with respect to their

financial means to pay for tuition and transportation, which they did not meet, and modified the underlying order to require that DOE reimburse Plaintiffs, rather than provide direct funding. On February 28, 2022, Plaintiffs initiated this action to challenge the SRO's decision.

## II.    STANDARD

"[A]n SRO's decision may be challenged in federal court[,]" through a procedure that "is in substance an appeal from an administrative determination, not a summary judgment motion." *Bd. of Educ. of Wappingers Cent. Sch. Dist. v. D.M.*, 831 F. App'x 29, 31 (2d Cir. 2020) (summary order) (internal quotation marks omitted). "[T]he reviewing court, using a preponderance of the evidence standard, is required to conduct an independent review of the administrative record and grant any appropriate relief." *Id.* "Where the IHO and SRO disagree, reviewing courts are not entitled to adopt the conclusions of either state reviewer according to their own policy preferences or views of the evidence; courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012); *accord V.W. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 6317, 2022 WL 3448096, at *4 (S.D.N.Y. Aug. 17, 2022). "However, . . . where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis[.]" *M.H.*, 685 F.3d at 246. "The standard of review requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete de novo review." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (internal quotation marks omitted).

**III.     DISCUSSION**

Plaintiffs challenge the SRO's 20% reduction in funding based on Plaintiffs' non-cooperation with the formulation of the 2018-2019 IEP.  They also challenge the SRO's finding that Plaintiffs had the burden to show financial need and failed to do so, arguing direct retrospective tuition is available under the IDEA without such a showing.  Defendant argues the SRO's decision should be upheld in full.

**A.     Reductions in Funding**

The 20% reduction in Plaintiffs' reimbursement for a full year of tuition and costs is upheld.  Plaintiffs' non-cooperation with the formulation of A.M.'s 2018-2019 IEP was unreasonable, one of the IDEA's contemplated bases for an equitable deduction.  Plaintiffs' non-cooperation supports a 20% deduction.

The IHO and SRO each made an equitable deduction from Plaintiffs' award of tuition and transportation costs.  First, the IHO found that for the period from July 1, 2018, to September 16, 2018, Defendant was obligated to reimburse only 50% of the cost of tuition and transportation, because during that period IBrain did not offer vision education services, one of the required services under A.M.'s IEP.  The SRO "decline[d] to disturb" this reduction, finding that "[a]lthough [he was] inclined to agree . . . that the lack of full implementation of services at [I]Brain does not constitute an equitable basis to reduce tuition reimbursement, . . . there are other equitable considerations that support a reduction[.]"  The SRO imposed deduction of 20% from the total award, to reflect Plaintiffs' non-cooperation with the formulation of the 2018-2019 IEP.

The IDEA identifies several factors that could warrant a reduction in the reimbursement to parents for the cost of a private placement after a school district fails to offer a FAPE.  These

6

include the parents' failing to provide notice of the child's new placement, preventing the child from being evaluated by the school district and other unreasonableness. *See* 20 U.S.C. § 1412(a)(10)(C)(iii).  The Second Circuit has further described circumstances that might warrant a reduction in reimbursement:

> [T]he district court may consider many factors, including, *inter alia*, whether plaintiff's unilateral withdrawal of her child from the public school was justified, whether plaintiff provided the Department with adequate notice of the withdrawal, whether the amount of private-school tuition was reasonable, whether plaintiff should have availed herself of need-based scholarships or other financial aid from the private school, and whether there was any fraud or collusion in generating (or inflating) the tuition to be charged to the Department, or whether the arrangement with the school was fraudulent or collusive in any other respect.

*E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014).  Neither of these lists is exhaustive, and a district court has "broad discretion to consider the range of all relevant facts in determining whether and to what extent awarding relief is equitable." *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 671 (S.D.N.Y. 2011).

Plaintiffs' non-participation in the formulation of the 2018-2019 IEP is the type of "unreasonableness with respect to actions taken by the parents," 20 U.S.C. § 1412(a)(10)(C)(iii)(III), that supports an equitable reduction in the reimbursement.  *See C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014) ("Important to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA."); *G.B. v. N.Y.C. Dep't of Educ.*, 145 F. Supp. 3d 230, 257 (S.D.N.Y. 2015) ("Courts have considered a variety of factors at this step, including whether the parents cooperated with the CSE (e.g., providing reports, attending the meeting, participating in the meeting)[.]" (citing *M.H.*, 685 F.3d at 254)); *J.S.*, 826 F. Supp. 2d at 671 ("Among the most important of [equitable factors] is whether the parents have cooperated with the District throughout the process to ensure their child received a FAPE." (cleaned up)).  CSE

repeatedly rescheduled the meeting to develop A.M.'s IEP, ultimately settling on a Monday at Plaintiffs' request. Starting well in advance of this meeting, CSE provided notice to Plaintiffs multiple times by various methods, in an attempt to ensure Plaintiffs' and IHope's participation. Plaintiff Maysonet stated that she did not attend the meeting because the DOE physician was going to attend telephonically, rather than in person. She does not explain why this justified her non-participation, particularly without notice to CSE. Finally, Plaintiffs also stated multiple times that they would provide CSE with A.M.'s progress reports once a meeting was scheduled, but they did not do so. This behavior was unreasonable and a negative equitable consideration under the IDEA, supporting the SRO's deduction. *See Donohue v. N.Y.C. Dep't of Educ.*, No 20. Civ. 19452, 2021 WL 4481344, at *10 (S.D.N.Y. Sept. 30, 2021) (finding a parent's behavior unreasonable due to non-attendance at CSE meetings and evaluation appointments and failure to provide progress reports).

  Plaintiffs' arguments to the contrary are unpersuasive. First, they argue that because Defendant concedes it did not provide A.M. a FAPE, it is precluded from arguing that the equities weigh in its favor. This is argument is legally incorrect as illustrated by the fact that denial of a FAPE and consideration of the equities are distinct prongs of the *Burlington/Carter* analysis. *See id.* at *10 n.4 ("There would be no need for a third prong -- the equities -- if it were the case that a finding of a denial of FAPE and an appropriate unilateral placement (the first two prongs) precluded denial or reduction of reimbursement costs for families."). Next, Plaintiffs argue that their attendance at the CSE meeting was not required. This is true, in the sense that federal regulations allow a school district to move forward in developing an IEP "if [it] is unable to convince the parents that they should attend." 34 C.F.R. § 300.322(d). However, those same regulations make clear that parental attendance is preferable and that districts should "take

steps," including early notification and flexible schedule, to include the parents. *Id.* § 300.322(a); *see also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 242 (2009) (finding that statutory provisions regarding equitable deductions "are premised on a history of cooperation and together encourage school districts and parents to continue to cooperate in developing and implementing an appropriate IEP before resorting to a unilateral private placement"). Defendant did so here, and Plaintiffs offer only vague and unpersuasive reasons for their non-attendance, supporting a finding of unreasonableness. Finally, Plaintiffs argue that they were not obligated to produce A.M.'s progress reports and that any failure to produce the reports is attributable to IHope rather than Plaintiffs. This argument fails because, while Plaintiffs were not legally obligated to participate in the IEP process, they repeatedly stated that they would produce the progress reports to Defendant in the weeks leading up to the June 4 meeting, and Defendant was left to formulate an IEP without them.

The amount of the deduction is upheld. Because Plaintiffs have not identified any errors of law in the SRO's assessment of an equitable reduction, the Court defers to the SRO's greater expertise as to the amount of such a reduction. The SRO's analysis of the equities is well-supported by record evidence and demonstrates careful review of the record. *See Mr. P. v. West Hartford Bd. of Educ.*, 885 F.3d 735, 748 (2d Cir. 2018) ("Deference to the administrative decision is particularly appropriate when the administrative officer's review has been thorough and careful, and when the court's decision is based solely on the administrative record."). Accordingly, the 20% deduction due to Plaintiffs' unreasonableness is upheld.

B.     **Direct Retrospective Tuition**

The SRO's decision is reversed to the extent it limits Plaintiffs' recovery to reimbursement of tuition and transportation costs that Plaintiffs have paid, rather than paying the school directly the full amount due, minus the deduction.

In his decision, the SRO reversed the IHO's order that Defendant "shall provide reimbursement or direct payment" of A.M.'s tuition at IBrain.  Instead, the SRO found that tuition reimbursement only upon proof of payment of services was appropriate, relying on *Mr. & Mrs. A v. N.Y.C. Dep't of Educ.*, 769 F. Supp. 2d 403, 406 (S.D.N.Y. 2011).  *Mr. & Mrs. A* held that the IDEA authorized a district court "to order a school district to make a retroactive tuition payment directly to [a] private school" when the *Burlington/Carter* factors were satisfied.  *Id.* at 406.  In that case, parents re-enrolled their child in a private school against the wishes of the school district and ultimately prevailed in IDEA litigation.  *Id.* at 419-20.  The parents had a documented inability to pay tuition and paid only nominal amounts to the school under a payment plan.  *Id.* at 411.  The district court held that the IDEA authorized the court to order the school district to fund the full amount of tuition, rather than the amounts actually paid, relying on the statutory language, relevant Supreme Court precedent and Congressional intent.  *Id.* at 427-30.  The SRO in this case found that *Mr. & Mrs. A* incorporated a requirement that parents show their inability to pay prior to an award of direct tuition funding.  Because Plaintiffs had not proffered evidence of their inability to pay, the SRO modified the IHO's decision to require Defendant to fund A.M.'s placement upon proof of payment for services delivered and eliminated the possibility of direct payment to the school.

This decision does not reach the question of whether parents must show their inability to pay in order to receive an award of direct tuition funding because, after the administrative

proceedings and at the Court's request, Plaintiffs proffered evidence of their inability to pay tuition and other costs. On March 6, 2023, Plaintiffs filed a sworn affidavit from Maysonet stating that neither she nor her family had the financial means to front these costs. The IDEA allows courts to consider additional evidence on appeal from an administrative proceeding. *See* 20 U.S.C. § 1415(i)(2)(C); *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380 (2d Cir. 2003) ("Federal courts reviewing administrative determinations under the IDEA must base their decisions on the preponderance of the evidence, taking into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties." (internal quotation marks omitted)). Courts in this District have considered supplemental evidence related to a parent's financial condition. *See, e.g.*, *A.R. ex rel. F.P. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 4493, 2013 WL 5312537, at *11 & n.10 (S.D.N.Y. Sept. 23, 2013); *Erde v. Banks*, No. 21 Civ. 9285, 2022 WL 18461297, at *9 (S.D.N.Y. Dec. 28, 2022), *report and recommendation adopted*, 2023 WL 373156 (S.D.N.Y. Jan. 24, 2023). Defendant was permitted to respond to Plaintiffs' affidavit but did not do so. Accordingly, Plaintiffs' affidavit is considered in connection with the cross-motions.

The IDEA's broad grant of discretion and the circumstances of this case -- including Plaintiffs' financial status, the time elapsed between when services were provided to A.M. and adjudication of Plaintiffs' claim and Defendant's undisputed obligation to cover the outstanding costs -- support an award of direct tuition payment.

The IDEA provides broad discretion to grant "such relief as … is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Supreme Court decisions interpreting this provision emphasize the plain meaning of this phrase, noting the breadth of discretion given to fashion appropriate relief in each case. *See Burlington*, 471 U.S. at 369 ("The ordinary meaning of [the IDEA]

confers broad discretion on the court."); *Carter*, 510 U.S. at 15-16 ("[O]nce a court holds that the public placement violated the IDEA, it is authorized to grant such relief as the court determines is appropriate. . . . Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors." (cleaned up)); *Forest Grove Sch. Dist.*, 557 U.S. at 239-40 ("[Section] 1415(i)(2)(C)(iii) . . . gives courts broad authority to grant 'appropriate' relief, including reimbursement for the cost of private special education when a school district fails to provide a FAPE."). "[T]he broad spectrum of equitable relief contemplated under the IDEA encompasses, in appropriate circumstances, a 'direct-payment' remedy." *E.M.*, 758 F.3d at 453. This is because "where the equities call for it, . . . direct payment . . . 'merely requires the school district to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.'" *Id.* at 453-54 (quoting *Burlington*, 471 U.S. at 370-71) (alteration omitted). Direct payment "also furthers the IDEA's remedial purposes by extending the unilateral withdrawal option to parents with limited financial means, who otherwise could not avail themselves of it." *Id.* at 454. In other words, direct payment serves two distinct purposes: ensuring a school district pays expenses that it bears responsibility for and extending access to a FAPE to families of limited means.

In this case, an award of direct tuition payment would further both of these purposes. The parties agree that Defendant did not provide A.M. a FAPE for the 2018-2019 school year, that IBrain offered her a FAPE and that Defendant is ultimately responsible for the costs of her attendance at IBrain. Defendant offers no persuasive reason for requiring Plaintiffs to front the costs of tuition for services rendered almost five years ago (even assuming they could do so) and then receive reimbursement. In light of the IDEA's clear purpose of providing a FAPE to

disabled children regardless of their financial resources, an award of direct tuition payment is appropriate. In sum, the circumstances of this case support an award of direct tuition payment.

*   *   *

For the reasons given above, Plaintiffs' and Defendant's cross-motions are each **GRANTED IN PART AND DENIED IN PART**. Defendant shall pay 80% of the costs of A.M.'s placement for the 2018-2019 school year directly to IBrain. The parties shall meet and confer regarding Plaintiffs' fee application in the Fourth Cause of Action, and shall file a joint letter by **March 30, 2023**, proposing how to proceed.

The Clerk of Court is respectfully directed to close the motions at Dkts. 18 and 21.

Dated: March 16, 2023
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE